**FREE & ACCEPTED MASONS OF TEXAS v. TAYLOR et al.**

**No. 1768.**

Court of Civil Appeals of Texas. Waco.

June 4, 1936.

Rehearing Denied July 16, 1936.

Witt, Terrell & Witt and Geo. W. Barcus, all of Waco, for appellant.

R. D. Evans and Jno. B. Atkinson, both of Waco, for appellee.

ALEXANDER, Justice.

The record in this case shows that the defendant is a corporation conducting a fraternal benefit society for colored people, with a grand lodge and local lodges throughout the state. Frank Pembroke had been a member of Robinson lodge, one of defendant's local lodges, for more than twenty-five years prior to his death. Under the constitution and by-laws of the grand lodge, there is what is known as "Relief and Benefit Fund," which fund is created by each member of the lodge paying the sum of $14 per year, $12.50 of which goes to said "Relief and Benefit Fund." This fund is by the secretary of the grand lodge at each annual meeting in June distributed equally to the survivors of all members of the grand lodge who died during the preceding Masonic year in good standing and who had paid their relief dues. The Masonic year begins May 15th and ends the following May 14th. Each member is charged with the above-mentioned dues in the sum of $14 per year in advance on May 15th, but the member is permitted by the by-laws to pay such dues in two installments of $7 each on the following September 10th and December 10th, respectively. In the event of a failure to pay such dues on or before the above-mentioned dates, all right to participate in the relief benefits is forfeited. Such dues may be paid to the secretary of the local lodge. Pembroke paid all such dues up to and including the Masonic year 1932–33, but did not pay his dues for the year 1933–34 until February 8, 1934. He died February 11, 1934. Edith Taylor and others as his beneficiaries brought this suit to recover their share of said relief benefits. A trial before the court without a jury resulted in judgment for plaintiffs. The defendant appealed.

The trial court filed the following material findings: "He (Frank Pembroke) did not pay his Masonic Grand Lodge dues for the Masonic year 1933–34 on or before December 10th, of the year 1933, in partial payments or otherwise. However, on the 8th day of February, 1934, Curtis Pembroke, his son, acting for him, tendered to John Bilton, secretary of his local lodge, the sum of $14.00 in payment of the Masonic dues for that Masonic year, that being the amount due, and the same was accepted by the local secretary and a receipt

issued to him therefor. No doctor's certificate accompanied said payment, nor was one demanded. This $14.00 was returned to Curtis Pembroke by John Bilton after the death of Frank Pembroke; Frank Pembroke had been in bad health for the past several years, was very sick at the time such payment was made and died some three days later on the 11th day of February; the deceased's Grand Lodge dues for the year 1932–33 were not paid before December 10th, of 1932, either in whole or in part, but he tendered to the local secretary of his lodge the sum of $14.00 in payment thereof during the month of January, 1933, and the same was accepted and transmitted to and accepted by the Grand Lodge; no doctor's certificate being required of him at the time of such acceptance, nor thereafter; the defendant, Order, in the conduct of its business, had in recent years received Grand Lodge dues from its members after December 10th of the Masonic year, to such an extent that it had established a general custom of so receiving them, and this without requiring of them medical certificates, and of this general custom Frank Pembroke was aware. * * * Frank Pembroke knew of the general custom of the defendant of receiving dues after December tenth during the current Masonic year, and relied thereon in failing to pay his dues on or before December 10th, 1933, and he also relied upon the previous conduct of the officers of the lodge in so receiving his dues in January of the previous Masonic year 1932–33 in failing to pay his Masonic dues for the year 1933–34 on or before December 10th of that Masonic year."

■ If, as found by the trial court, the appellant had a custom of permitting its members to pay their dues after the dates specified in the by-laws and the deceased member actually paid his dues to a lawfully authorized agent of appellant within the time permitted by such custom, then his membership could not lawfully be forfeited, and his beneficiaries are entitled to participate in the relief fund. The appellant challenges the sufficiency of the evidence to sustain the trial court's finding with reference to the custom above referred to. Curtis Pembroke, a son of the deceased, testified that he paid his father's dues on February 8, 1934, to the clerk of the local lodge, and that said clerk took the money and issued a receipt therefor and did not demand a doctor's receipt showing good

health. He further testified that his father always paid his dues if and when he got the money. He said: "We were in a custom of paying the dues every year any time we got the money—any time before the 15th of March, I mean the 15th of May." Edith Taylor, a daughter of the deceased, testified that she paid her father's dues to the clerk of the local lodge for the 1932–33 Masonic year in January, 1933, and no doctor's certificate was demanded. She further testified as follows:

"Q. Did he (referring to John Bilton, secretary of the local lodge) ever say anything about when you could pay the lodge dues? A. Of course, they asked us to pay as soon as we could, but the last few years they have not been so prompt about sending the money off and whenever they could get it they would send it off.

"Q. Did he tell you that? A. Yes, sir.

"Q. Did you tell your father that when he (the clerk) told you? A. Yes, sir.

"Q. Mr. Bilton (the clerk) you say told you that any time you could get it up he would send it on. A. Yes, sir."

C. F. Cook testified that he was clerk of Pride lodge, another one of appellant's local lodges; that since the recent depression he has allowed the members of his lodge to pay their dues two or three weeks late, but never as late as three or four months. He further testified as follows:

"Q. And for the past six years you have been permitting your members to pay their dues after the 10th of September and after the 10th of December sometimes two or three weeks late? A. Occasionally—it depends on how the money was coming in.

"Q. And you never did have any report come back from the grand lodge after sending too late, have you? A. No, sir, never did."

Bilton, the secretary of the local lodge of which Pembroke was a member, admitted that Pembroke's dues for the Masonic year 1932–33 were not paid until January, 1933, and that the grand lodge accepted and retained the money although paid late, but he claimed that a doctor's certificate of good health accompanied the remittance. He further testified that if a member failed to pay his dues on time and was suspended and wanted to pay and get back in, it was his practice to take the money and send it with a doctor's certificate to the home office. He claimed that he demanded a doctor's certificate at the time he received

Pembroke's dues on February 8, 1934, and that the one who paid the dues agreed to furnish the doctor's certificate later. The above evidence, we think, was sufficient to support the trial court's finding.

■ Appellant contends that the secretary of the local lodge was not authorized to accept payment of dues for the grand lodge. Section 3 of the constitution provides: "The secretary shall send to the grand lodge on or before September 15th the relief dues of each brother desiring to share in the relief funds collected each year." This provision clearly recognizes the authority of the secretary of the local lodge to collect dues. The only limitation on his authority is found in section 16, which is as follows: "No local lodge or its officers shall ever be recognized as an agent of the Most Worshipful Grand Lodge Free & Accepted Masons of Texas, except to collect relief and grand lodge dues." While this provision may limit the authority of the secretary of the local lodge to bind the association in other respects, it certainly recognizes his authority to collect relief and grand lodge dues.

Appellant further asserts that the local secretary was not authorized to accept a payment of dues after the due date thereof, unless the payment was accompanied by a doctor's certificate showing good health, and since the payment here under consideration was not accompanied by such certificate, the payment of the dues on February 8th was ineffective. The only provision of the constitution requiring the payment of dues to be accompanied by a doctor's certificate is that found in section 13 of the constitution, which is, in part, as follows: "All Master Masons who are not reported in good financial standing May 14th of each year and are dropped from the Grand Lodge roll for the non-payment of relief or grand lodge dues or other assessments may be reinstated by his lodge only on the presentation of a competent doctor's certificate showing that he is in perfect health and the payment of $14.00 plus what he is due when dropped from the roll." This provision by its terms applies only to those who are reported delinquent at the end of the Masonic year and who desire to be reinstated thereafter. It has no application to members who desire to pay their dues after the due date but before the end of the Masonic year.

We have considered all of appellant's assignment of error and find them without merit.

The judgment of the trial court is affirmed.