## GRAND LODGE COLORED KNIGHTS OF PYTHIAS OF TEXAS v. CARTER et al.

### No. 1773.

Court of Civil Appeals of Texas. Waco.

Dec. 17, 1936.

Rehearing Denied Jan. 28, 1937.

Allan McDonnell, of Waco, for appellant.

H. L. Williford, of Fairfield, and Bryant & Williford, of Wortham, for appellees.

GALLAGHER, Chief Justice.

This suit was instituted by appellees, Lessie Carter and Tom Carter, against appellant, Grand Lodge Colored Knights of Pythias of Texas, to recover on a benefit certificate issued by it on the life of Hadren Carter. Said certificate was issued to said Hadren Carter on July 28, 1931, and he died June 19, 1934. Appellee

Lessie Carter is his surviving wife and appellee Tom Carter is his son. They were named as joint beneficiaries in said certificate.

The benefit certificate sued upon herein was issued subject to the constitution and by-laws of appellant order. The insured was required thereby to pay $1.50 as premium and 50 cents Grand Lodge dues quarterly to keep such certificate in force. Such quarterly payments became due on the first day of each calendar quarter of the year. Appellant, to facilitate collections and to preserve a record of the transactions of the local lodges collecting such quarterly payments, on or before the first day of each calendar quarter, mailed to each subordinate lodge official receipts, attached to appropriate stubs, showing the amount due for such quarter by each and every member of such lodge. The payments so due were permitted to be made at any time during said month. When a member made such payment, the fact of payment was entered on the stub, and the receipt, properly executed, was detached and delivered to him. After the close of each such month all stubs representing collections made and all stubs and receipts representing uncollected payments were returned to appellant. Failure to make any such quarterly payment automatically suspended such member's benefit certificate and defeated the right of his beneficiaries to recover thereon in event of his death. Any member so suspended was, by the terms of appellant's by-laws, deprived of the privilege of reviving his certificate until the first day of the first month of the next succeeding quarter. He might at that time or at any time during that month make to the local lodge payment of the amount due for the preceding quarter, together with the amount due for the current quarter, and such action on his part would automatically revive his certificate and the right of his beneficiaries to recover thereon. When a member had defaulted in two such quarterly payments, a like privilege was extended to him during the first month of the next succeeding calendar quarter. Only after a third default was a certificate of good health required as a condition precedent to such revival. By the terms of the by-laws, local lodges and the officers thereof were without power to waive any of such provisions.

The local lodge to which the insured belonged was known as Mayflower No. 474.

Cal Dawson was chancellor commander of that lodge, and his son, Troy Dawson, was master of finance thereof. While it was provided by the by-laws of the order that all collections should be made by the master of finance within the castle hall of each local lodge, such by-laws were, and had been for a number of years, disregarded by Mayflower Lodge. The chancellor commander, Cal Dawson, testified that he personally made most of the collections for the lodge; that the master of finance signed most of the official receipts, but that in a few instances, when he had the receipt with him, he signed the same himself; that he turned over all collections made by him to said officer and that he (witness) examined and checked the reports and signed the checks by which premiums and dues were transmitted therewith to appellant. Said witness further testified that the custom of paying premiums and dues to him had existed over a period of four or five years; that he often collected premiums and dues after the dates prescribed in the constitution and by-laws and that appellant always accepted the same up to the death of the insured, Hadren Carter; that such collections by him were made on the street, the money turned over to the master of finance and deposited in a bank in the name of the lodge, but that such deposits were subject only to the check of the chancellor commander. Said witness further testified that the insured, Hadren Carter, had on several occasions paid to him premiums and assessments after the time limited for such payment had expired, and that appellant accepted the same.

The insured, Hadren Carter, did not pay his premiums and dues for the first calendar quarter of the year 1934, nor did he pay his premiums and dues for that and the second quarter of said year on or prior to April 30th, as was required by the by-laws. The report of Mayflower Lodge to appellant, made on May 14th thereafter, showed such default. Said insured did, however, on May 19, 1934, pay the total dues owed by him for both said quarters to said Cal Dawson. There is no intimation anywhere in the testimony that the insured was sick at the time nor that any cause for expecting his early death existed when such payment was made. The payment so made by him had not been transmitted to appellant at the time of his death. Appellant denied liability on his benefit certificate on the ground of an alleged

744

breach of its by-laws in the making of such payments within the time limit prescribed thereby.

The case was submitted on special issues, and findings of the jury in response thereto were, in substance, as follows:

(1) Cal Dawson, chancellor commander of said lodge, received a large number of the dues and assessments owed by the members thereof and caused the same to be transmitted to appellant, Grand Lodge, for a period of several years immediately preceding June 19, 1934, at times after the maturity date of the same, under the constitution and laws of said order and appellant always accepted the same up to said date.

(2) Appellant, by its act and conduct in receiving such dues and assessments, waived the requirements of the constitution and by-laws which required quarterly premiums to be paid within thirty days after the maturity date thereof.

(3) The insured, Hadren Carter, had, on June 19, 1934 (the date of his death), paid the two quarterly installments due January 1st and April 1st, respectively, of said year to the authorized agent of appellant.

(4) Said insured had paid all dues and assessments owed by him to the order up to the time of his death.

Appellant made no objection to the issues submitted nor did it request the submission of any other or further issues. The court rendered judgment in favor of appellees against appellant for the sum of $275. There is no complaint of the amount of said judgment. Appellant filed motion for new trial in which it assailed the verdict of the jury on the ground that there was no evidence that the insured, Hadren Carter, paid the premiums owed by him in accordance with the laws, rules, and regulations of appellant; that there was no evidence that the premiums and dues owed by the insured, Hadren Carter, for the first and second quarters of the year 1934, were paid to any person authorized by appellant to accept the same; and that the evidence was wholly insufficient to warrant a finding that Cal Dawson was the authorized agent of appellant for the receipt of premiums and dues.

## Opinion.

Appellant presents a group of propositions in which it contends that the payment of all arrears in premiums and dues made by the insured, Hadren Carter, on the 19th day of May, 1934, was ineffective to reinstate him as an insured member or to entitle his beneficiaries to recover on his certificate on account of his death, because its by-laws prohibited the payment of delinquent dues at that time, and also because its by-laws provided for payment of premiums and dues to the master of finance of his lodge and such payment was made to its chancellor commander. When an insurer customarily permits a particular practice with respect to the payment of premiums, it is precluded from claiming a forfeiture of the policy if the payment of the premium in question has conformed to such practice. 24 Tex.Jur. p. 885, § 152. This issue was involved in the case of Free & Accepted Masons of Texas v. Taylor (Tex.Civ. App.) 96 S.W.(2d) 126, 127, par. 1. The opinion of the court in that case was written by Mr. Justice Alexander, and we quote therefrom as follows: "If, as found by the trial court, the appellant had a custom of permitting its members to pay their dues after the dates specified in the by-laws and the deceased member actually paid his dues to a lawfully authorized agent of appellant within the time permitted by such custom, then his membership could not lawfully be forfeited."

Such holding is in accord with and supported by the following cases: Supreme Lodge, K. of P., v. Hooper (Tex.Civ.App.) 282 S.W. 867, 869, par. 3 (writ refused), and authorities there cited; Grand United Order of Odd Fellows v. Massey (Tex. Civ.App.) 87 S.W.(2d) 310, 311, pars. 2 and 3; Sovereign Camp, W. O. W., v. Helm (Tex.Civ.App.) 70 S.W.(2d) 213, 215, par. 1; Brotherhood of Railroad Trainmen v. Smith (Tex.Civ.App.) 36 S.W.(2d) 771, 773, par. 3 et seq.; Southern Travelers' Ass'n v. Masterson (Tex.Civ.App.) 48 S.W. (2d) 771, par. 7; Griffith v. Supreme Council of Royal Arcanum, 182 Mo.App. 644, 166 S.W. 324, 327, pars. 1 to 3, inclusive; Bruns v. Milk Wagon Drivers' Union, Local (Mo.App.) 242 S.W. 419, 421, par. 2; 32 C. J. p. 1347, § 623.

Briefly summarized, the testimony above recited shows that payments of premiums and dues by the members of Mayflower Lodge during a period of five years or more were habitually made to Cal Dawson, the chancellor commander; that he received all such payments, whether tendered when due or after the time lim-

ited for the payment thereof had expired; that the insured, Hadren Carter, had on several occasions made his payments after such time limits; and that in every instance of payment after delinquency, either by said Carter or any other member of the lodge, appellant accepted such payment until June 19, 1934, the date of the death of said Carter. The jury found in effect that such custom existed and that appellant, by acquiescing therein and habitually receiving such delinquent payments, waived the requirement of its by-laws that quarterly premiums must be paid within thirty days after the maturity thereof. The same principle applies to the action of the chancellor commander in assisting the master of finance in the collection of dues. His participation in that connection was necessarily brought home to the Grand Lodge by the fact that he alone signed the name of his lodge to checks transmitting collections to appellant. It is a general rule in insurance business that incidental and clerical services may be rendered by the clerks or employees of the duly constituted agent and that their acts in performing such services, being with the express or implied authority of the agent, are in legal effect his own. London & Lancashire Ins. Co. v. Higgins (Tex.Civ.App.) 68 S.W.(2d) 1056, 1058, pars. 8 to 11, inclusive, and authorities there cited; Fireman's Fund Ins. Co. v. Reynolds (Tex.Civ.App.) 85 S.W.(2d) 826, 827, par. 1, and authorities there cited. The jury found that the two quarterly installments of premiums and dues paid by Hadren Carter on May 19, 1934, were paid to an authorized agent of appellant. Appellant's said contentions are therefore overruled.

The judgment of the trial court is affirmed.