SOUTHLAND LIFE INSURANCE COMPANY V. EULA LAWSON.

No. 7672. Decided June 25, 1941.
Rehearing overruled July 23, 1941.
(153 S. W., 2d Series, 953.)

*Malone, Lipscomb, White & Seay,* of Dallas, for plaintiff in error.

It was error for the Court of Civil Appeals to hold that the custom of paying premiums to defendant's agent who in turn had transmitted them to defendant could only be terminated by mutual agreement prior to the tender of the premiums, and

that the premium having been tendered two days prior to its due date at the usual place could not operate to invoke a forfeiture by defendant. Bryant v. Continental Life Ins. Co., 192 S. W. 581; Border State Life Ins. Co. v. Monk, 103 S. W. (2d) 825; Postal Indemnity Co. v. Rutherford, 49 S. W. (2d) 1115.

*Frank Cusack,* of Dallas, for defendant in error.

MR. JUSTICE CRITZ delivered the opinion of the Court.

This suit was filed in the District Court of Ellis County, Texas, by Mrs. Eula Lawson against Southland Life Insurance Company to recover on a policy of life insurance issued by such Company to Charles Hudson Lawson. Mrs. Eula Lawson was named as beneficiary in such policy, which was for the sum of $1,000.00. Trial in the district court without the aid of a jury resulted in a judgment for Mrs. Lawson against the Company for $1,000.00, less $3.67, one of the quarterly premiums. Also, judgment was for Mrs. Lawson for twelve per cent. penalty in the sum of $120.00 and $300.00 attorney's fees, or a total judgment of $1,416.33. On appeal by the Company, the judgment of the district court was affirmed by the Court of Civil Appeals. 132 S. W. (2d) 301. The Company brings error.

Mrs. Lawson predicates her right to recover in this action on the assertion that she was the beneficiary in a policy of life insurance issued by this Company upon the life of her son, Charles Hudson Lawson; that the insured had died while the policy was in force, and that the insurer had refused payment. Mrs. Lawson's petition prayed for judgment for the face of the policy, plus twelve per cent. statutory penalty, and a reasonable attorney's fee. The district court awarded judgment in Mrs. Lawson's favor as above indicated.

The Company defended this action on the ground that at the time of the death of the insured the policy had lapsed, on account of the nonpayment of one of the premiums. In this connection, it is asserted by the Company that at the time of the insured's death the policy had no cash value to continue it in effect as extended insurance, and therefore it was not in effect at the time of the insured's death.

Mrs. Lawson met the contention that the policy had lapsed for nonpayment of premiums with the contention that the

unpaid premium had been timely tendered to the Company's local agent at Waxahachie, Texas; that he had refused to accept it, and that therefore the Company was estopped to claim a lapse of the policy for nonpayment of such premium, and had waived the payment thereof.

1 The case turns on the question as to whether or not this record contains evidence sufficient in law to establish waiver or estoppel. In this connection, we note that since the trial court rendered judgment for Mrs. Lawson, we must consider all disputed issues of fact as resolved in her favor. Also, we must consider all testimony in the most favorable light that will support the judgment of the trial court. As above construed, the facts of this case are as follows:

1. The policy made the basis of this suit was issued by this Company to Charles Hudson Lawson on February 11, 1935, and duly delivered.

2. Mrs. Eula Lawson, mother of the insured and defendant in error here, was named as beneficiary.

3. The premiums provided by such policy were payable quarterly on the 11th day of February, May, August, and November of each year.

4. The policy complied with the statutes of this State in providing: "Premiums are payable in advance at the home office of the Company or to any designated collector upon the delivery of a receipt signed by the president or secretary of the Company and countersigned by such Company." Section 1, Article 4732, R. C. S. 1925.

5. The policy contained a grace period of thirty-one days for the payment of premiums. This complied with the provisions of Section 2, Article 4732, R. C. S. 1925.

6. The quarterly premium due on this policy on November 11, 1936, was never paid.

7. Charles Hudson Lawson, the insured, died on the 14th day of February, 1937, more than thirty-one days (the grace period for payment of premiums) after November 11, 1936. In this connection, it will be noted that the insured died within the grace period of the premium due February 11, 1937.

8. C. H. Cowart was the local agent of the Company at Midlothian, in Ellis County, Texas, during all the time here involved. His contract with the Company gave him the usual

statutory powers of a soliciting agent. Article 5063, R. C. S. 1925. In this connection, Cowart had authority to solicit applications for life insurance, to collect first premiums, and to deliver policies. He was expressly denied the right to waive or alter any provision in any policy or application. The Company never gave Cowart any receipt forms for renewal premiums, and he never issued any official receipts of any kind.

9. As already shown, this policy was issued on November 11, 1935. We will presume that the initial premium was duly paid. The premiums falling due in May, August, and November, 1935, and in February, May, and August, 1936, were paid in due time. It appears that one of these premiums was paid at the home office of this Company. We gather that the premiums due May 11, August 11, 1935, and February 11, May 11, and August 11, 1936, were paid to or through C. H. Cowart, at Midlothian, Texas, by Mrs. Eula Lawson or her daughter. At least the record shows that five premiums were paid to Mr. Cowart. It appears that on four of these occasions either Mrs. Lawson or her daughter went to Cowart's office in Midlothian with the premium notice from the Company. On such occasions the amount of the premium due on this policy was handed to Mr. Cowart with the premium notice. Cowart took the money and forwarded to the Company his own check for the amount of the premium, with the notice slip attached. The Company on each such occasion accepted Cowart's check, properly endorsed the notice slip as paid, and forwarded it direct to the insured. The money for one of the five premiums due on this policy was handed to Cowart without, at the time, delivering to him the notice slip from the Company. Cowart sent his check to the Company for such premium. The check was accepted by the Company, and duly executed receipt mailed direct to the insured. It seems to have been shown that Cowart at times did for other policy holders what he did for the Lawsons. It is not shown that this was known to the Lawsons, or that it had any effect on their actions.

10. As to the tender of payment of the premium due November 11, 1936, Mrs. Lawson, in substance, testified: That she went to Mr. Cowart's office on the 9th of November, 1936; that she went there to pay the premium on this policy due on November 11, 1936; that she carried with her the money to pay such premium; that she offered such premium to Mr. Cowart; that Mr. Cowart had accepted payments before; that she believed it was proper to pay the money to Mr. Cowart;

that when she offered such money to Mr. Cowart he refused to accept it; that Mr. Cowart said he had rather not get any of her premiums; that Mr. Cowart said for her to write to the Company, or for the insured to go to the office and pay it himself; that Mr. Cowart said to pay the premium to the home office of the Company at Dallas. Mrs. Lawson then testified, in effect, that she did not pay the premium to Mr. Cowart, and that she never made any other effort to pay it to the Company at the home office in Dallas, Texas, where the policy provided for payment. Mrs. Lawson then testified that she still had more than a month to make payment to the Company. Mrs. Lawson offered no excuse for not making payment to the Company, except the contention that sufficient tender had been made when the money was offered to Mr. Cowart.

11. As to the above matter, Mr. Cowart testified in substance: That during the time here involved he was local agent at Midlothian, Texas, for Southland Life Insurance Company; that he took applications for life insurance in this Company; that he forwarded same to the home office of the Company; that he issued no policies; that when an application was forwarded by him to the Company, and accepted, the policy would be sent to him for delivery; that when an application was rejected he was notified; that he countersigned no policies, and had no receipts for premiums in his possession. In regard to the premium due November 11, 1936, on this policy, Mr. Cowart testified: That he had no conversation or transaction of any kind with Mrs. Lawson about it at all; that in the early part of November, 1936, Miss Velma Lawson, daughter of Mrs. Eula Lawson, came to his office and said she wanted to pay Charles' life insurance; that he asked her for the premium notice; that she said she did not have it; that he told her he had no record of the matter, and asked her to go and get the premium notice and he would transmit the money to the Company for her; that Miss Velma said the notice was in Dallas; that he then advised her to step in at the Company's office in Dallas and pay it; that he told Miss Velma that he did not fool with transmissions to this or any other company without premium notices on which to transmit; that he did this because he didn't want to have a mix-up; that Miss Velma then said it was some time before the premium was due; that he then told Miss Velma she had plenty of time to go to the home office in Dallas. Cowart does not testify as to whether Miss Velma made any reply to this. Also, Cowart testified that no one ever made any further

tender to him of this premium, and that no one ever brought him the premium notice.

12. Miss Velma Lawson was sworn as a witness for the plaintiff and absolutely denied having any conversation with Mr. Cowart regarding this policy in November, 1936. She further absolutely denied having any conversation with Mr. Cowart regarding the premium due on this policy on November 11, 1936.

From the above it is plainly evident that, as regarding the transactions pertaining to the tender of the quarterly premium on this policy due November 11, 1936, we must accept the testimony of Mrs. Eula Lawson and her daughter, Miss Velma Lawson, on the one hand, or the testimony of C. H. Cowart on the other hand. This must be true, because if we accept the testimony of Mrs. Lawson and Miss Velma Lawson, the transaction regarding such premium must have been between Cowart and Mrs. Lawson. On the other hand, if we accept the testimony of Cowart, the transaction was between him and Miss Velma Lawson.

2 Under the plain terms of this insurance contract, and under the plain provisions of our statutes, C. H. Cowart, as a mere soliciting agent of this Company, had no power, statutory or contractual, to bind the Company by accepting the quarterly premiums due thereon. Article 4732, section 1, supra. Under the plain terms of this insurance contract, and under the plain provisions of our statute, C. H. Cowart had no power to waive, change, or alter any of the terms or conditions of this policy. Article 5063, supra. It follows that Cowart had no power to waive, change, or alter the provisions of this policy requiring the premiums to be paid at the home office of the company, or to some designated collector upon the delivery of a receipt signed by the president or secretary of the Company and countersigned by the Company.

As we understand this record, Mrs. Lawson contends that, by accepting five premiums under the circumstances already detailed, this Company, by custom, waived the provisions of this policy requiring premiums to be paid at its home office in Dallas, or be paid to some designated collector upon the delivery of a receipt, etc. Mrs. Lawson then contends that because she tendered the premium due November 11, 1936, to Cowart before any notice of abrogation of such waiver, she did

all that was required by law to keep this policy alive until 31 days after the due date of the next quarterly premium. Mrs. Lawson contends that this is the law, regardless of the fact that she had ample time to pay as required by the policy after Cowart declined to accept payment.

The Company contends that the transactions with and through C. H. Cowart regarding the payment of premiums on this policy prior to November 11, 1936, did not establish a custom by which it waived the provisions of this policy with reference to the payment of premiums at its home office, etc., because such transactions would, in law, merely show that C. H. Cowart was made the agent of the insured, or Mrs. Lawson, and not of this Company, in transmitting such premiums to the home office of the Company. Also, the Company contends that, even should it be admitted that the previous transactions through Cowart constituted a waiver, by custom, on the part of this Company, still Mrs. Lawson's own testimony shows a termination of such custom at a time when there were thirty-three days still remaining in which to pay the November 11, 1936, premium at the home office of the Company; and therefore it became the duty of Mrs. Lawson, or this insured, to comply with this insurance contract and pay such premiums as in such contract provided.

We interpret the opinion of the Court of Civil Appeals to hold that the payments previous to November 11, 1936, of the five quarterly premiums paid to C. H. Cowart, the local agent of this Company, the acceptance of such premiums by him, the transmission of same to this Company, and the acceptance thereof by it, constituted evidence sufficient, in fact and in law, to establish a waiver by custom on the part of this Company of the contractual obligation of the insured to pay all premiums at the home office of the company, or to some designated collector upon delivery of a receipt, etc., and that such custom was not terminated by Cowart's refusal to receive and transmit the premium due November 11, 1936, because there was not mutual agreement or notice to that effect made or given prior to such tender. We here quote from the opinion of the Court of Civil Appeals:

"Certainly, before a custom is acted on by either party, it may be changed by mutual agreement. In the case at bar, however, the beneficiary tendered the premium to Cowart before receipt of notice of a desire to change the custom. Consequently,

we held that the tender made at the usual and customary place was sufficient to prevent forfeiture."

3, 4 Simply stated, we interpret the opinion of the Court of Civil Appeals as holding that when an insurance company has once waived, by custom, the legal and binding contractual obligations of its insurance contract with a policy holder, with reference to the payment of premiums, it cannot thereafter abrogate such waiver and enforce its insurance contract without the consent of the policy holder, unless it does so before the waiver is acted on by the other party. We understand that the opinion of the Court of Civil Appeals holds as just indicated, regardless of the issue of fraud or injury. In our opinion, an insurance company can waive, by custom, the contractual obligation of its insurance policy with reference to the payment of premiums at the home office of the company, etc., and in such instances the insurance company will not be permitted to stand on the insurance contract, where to do so would operate as a fraud on the insured or result in an injustice to him. In regard to such matter, we think the rule is that waiver by custom does not change the original contract. It merely operates to estop the company from asserting its rights thereunder. The doctrine of waiver in such instances is only another name for the doctrine of estoppel. It can only be invoked where the conduct of the insurance company has been such as to induct action in reliance upon it, and where it would operate as a fraud on the insured, or an injustice to him, if the company were allowed afterwards to disavow its waiver and enforce the policy conditions. Globe Mutual Ins. Co. v. Wolff, 95 U. S. 326, 24 L. Ed. 387. We quote the following from the opinion in the case just cited:

"The doctrine of waiver, as asserted against insurance companies to avoid the strict enforcement of conditions contained in their policies is only another name for the doctrine of estoppel. It can only be invoked where the conduct of the company has been such as to induce action in reliance upon it, and where it would operate as a fraud upon the assured if they were afterwards allowed to disavow their conduct and enforce the conditions."

5 Assuming for the purpose of this opinion, but not deciding the question, that the acts and conduct of this company in accepting payment of premiums due on this policy through C. H. Cowart, its local agent at Midlothian, Texas, were suffi-

cient to constitute a waiver by custom of the contractual obligation to pay such premiums at the Company's home office, etc., still it is our opinion that, under the undisputed testimony of Mrs. Lawson, such custom was terminated by the transaction between her and C. H. Cowart at the time she offered to pay to him the premium due November 11, 1936. At that time Cowart declined to receive or to transmit the premium tendered. No fraud or injustice is occasioned by enforcing the contract, because Mrs. Lawson still had thirty-three days to pay the premium as in the contract provided. This was ample time, and time to spare. Dallas, the home office of the Company, was only thirty-five or forty miles away. Mrs. Lawson made no effort to transmit the premium to the Company; and, as already said, offers no excuse for not doing so, except to say that she had performed her full duty in tendering the payment to C. H. Cowart.

It is insisted by counsel for Mrs. Lawson that the case of Manhattan Life Ins. Co. v. Fields (Civ. App.), 26 S. W. 280, supports a judgment for her in this case based on waiver. To our minds, when the opinion in the Fields case is fully considered, it is absolute authority against Mrs. Lawson. In the Fields case one Henry Fields took out a policy of insurance in the Manhattan Life Insurance Company of New York. The premiums due on such policy were, by the terms thereof, payable at the office of the insurance company in New York. The policy contained no grace period provision. The agent of the insurance company had directed Fields to pay his premiums at a bank in San Antonio. Fields complied with such instructions and made payment to the bank a number of times. The premium last maturing before Fields' death became due January 9, 1891. On January 7 and 8, 1891, the premium due January 9, 1891, was tendered to the designated bank, and the tender refused. There was not sufficient time remaining to make payment in New York before the policy would lapse according to its terms on January 9, 1891. Under such a record it was held that the insurance company had waived payment in New York and could not insist on payment there, because the insured did not have sufficient time to pay in New York after receiving notice that he could not pay at the bank. As already shown, the premium was due on January 9th, and would lapse on that day, because the policy contained no grace period provision.

We have alluded to the fact that there is a conflict between

the testimony of C. H. Cowart, on the one hand, and the testimony of Mrs. Lawson and Miss Velma Lawson, on the other hand, as to who tendered to Cowart the premium due on this policy November 11, 1936. We are convinced from this entire record that this discrepancy occurred on account of the fact that there were several payments made to Mr. Cowart,—some by Mrs. Lawson, and some by Miss Velma Lawson. We do not think that there is any indication in this record of an intent on the part of any witness to mistake the facts. The testimony of Mr. Cowart as to what occurred when this premium was tendered to him, and the testimony of Mrs. Lawson in regard to such matter, are, in legal effect, the same. The only difference between the two is that Cowart says that the transaction was with Miss Velma Lawson, and Mrs. Lawson says that it was with her. Under the testimony of both Mrs. Lawson and Mr. Cowart, Cowart declined to receive payment of the premium due November 11, 1936, at a time when there was ample time, and more, to make payment as provided in the insurance contract.

The judgments of the Court of Civil Appeals and district court are both reversed, and judgment is here rendered for Southland Life Insurance Company.

Opinion delivered June 25, 1941.

Rehearing overruled July 23, 1941.