# GENERAL AMERICAN LIFE INSURANCE COMPANY V. JOE RIOS.

No. 7919. Decided July 1, 1942.
Rehearing overruled October 7, 1942.
(164 S. W., 2d Series, 521.)

*John R. Griffiths, Allen May* and *J. R. Burcham,* both of St. Louis, Mo., *Brooks, Napier, Brown & Matthews* and *Harper McFarlane,* all of San Antonio, for plaintiff in error.

The Court of Civil Appeals erred in holding that the right of plaintiff became vested upon the beginning of disability received by him under the terms of the policy. Colter v. Travelers Ins. Co., 170 N. E. 407; Missouri State Life Ins. Co. v. Hardin, 78 S. W. (2d) 832; Wann v. Metropolitan Life Ins. Co., 41 S. W. (2d) 50.

*G. Woodson Morris,* of San Antonio, for defendant in error.

MR. JUDGE TAYLOR delivered the opinion of the Commission of Appeals, Section B.

The insured, Joe Rios, filed this suit to recover from General American Life Insurance Company for total and permanent disability as provided by a certificate of insurance issued to him under a group insurance policy issued by the company to the employer of Rios. The trial court awarded judgment in favor of Rios. The El Paso Court of Civil Appeals affirmed the judgment. 154 S. W. (2d) 191. See the opinion for a more detailed statement of the case.

The coverage provision provided by the insurer for total and permanent disability, as set out in the policy and certificate, is as follows:

"If an employee insured under this policy shall furnish the company with due proof that before having attained the age of 60 years, he or she has become totally and permanently disabled by bodily injury or disease, and that he or she is then, and will be at all times thereafter, wholly prevented thereby from engaging in any gainful occupation, and that he or she has been so permanently and totally disabled for a period of six months, the company will immediately pay to such insured in full settlement of all obligations hereunder as to such insured's life, the amount of insurance in force hereunder on such insured at the time of the approval by the company of the proofs as aforesaid. This amount will be paid either in one sum or in installments as hereinafter provided. For each $1,000.00 of insurance hereunder the amount of each installment shall be in accordance with the following table: (Here follows a statement of the optional methods of installment payment)."

The provision obligating the company to pay the compensation provided for total and permanent disability may be more tersely stated, for present purposes and without variance of language, as follows: "If the employee shall furnish the company with due proof that * * * he has become *totally and permanently disabled* * * *, and that he * * * has been so * * * disabled for a period of six months, the company will immediately pay to the employee* * *, the amount of insurance in force * * * at the time of the approval by the company of the proofs as aforesaid.*"

The provision governing the payment of premiums reads:

"All premiums are payable in advance at the home office of the company, but may be paid to an authorized agent of the company upon delivery of a receipt signed by the president or vice-president, and countersigned by said agent. If any premium shall not be paid when due, this policy shall terminate except as hereinafter provided."

(The exception has reference to certain conversion privileges accorded employees, and to other matters not pertinent here.)

Rios sustained total and permanent disability May 10, 1937. His premiums were paid to July 26, 1937, and none was paid after that date. On November, 1937, Rios' attorney wrote the company that Rios had become "totally and permanently disabled as a result of injuries received" (May 10, 1937) and that he had at the time the letter was written, "became permanently and totally disabled for a period of six months." It will be assumed for present purposes (without deciding) that the letter was sufficient, along with other facts, to constitute due proof of total and permanent disability for a period of six months. No provision of the policy contract is pointed to (and we find none) excusing the failure to continue payment of the monthly premiums after July. There are no facts indicating an impossibility of performance of any of the contract requirements incumbent upon the assured.

In this case, as in General American Life Insurance Company v. Johnson et al, 88 S. W. (2d) 535, opinion by the Beaumont Court, (same coverage provisions and same provisions for payment of premiums) the company asserted substantially that by virtue of the stipulations of the coverage and premium paying provisions of the contract it was necessary for Rios, in order to establish liability on the part of the company, to make

due proof that total and permanent disability had existed for a period of six months; and asserted further in this connection that during such period, and until due proof of such disability was furnished the company, the certificate must have been kept in force by the payment of premiums as provided by the contract.

The Court of Civil Appeals in affirming the trial court's judgment stated there is a division of authority upon the question of the necessity on the part of the insured to keep the policy in force by continuing the payment of premiums until the furnishing of due proof of total and permanent disability; and further states that it was with extreme reluctance the Court declined to follow the Beaumont Court in General American Life Insurance Company v. Johnson above referred to, the correctness of the judgment in which this Court recognized by dismissing the application filed therein for writ of error, noting in so doing that the judgment was correct. Writ of error was granted in the present case on its conflict with the Johnson case referred to.

The view of the El Paso Court in sustaining the judgment below in favor of Rios, briefly stated, as expressed in its opinion, is that the company's obligation to pay should be held to be existent, though in an unmatured state, throughout the period from the beginning of disability and until the making of "due proof" on November, 1937, notwithstanding the insured's failure to pay any of the premiums after the month of July, 1937, following his injury in May of that year.

■ The reason for concluding the obligation was existent throughout the time referred to is not to be found in the policy contract. The coverage clause of the contract quoted above clearly obligated the company to pay the sum stipulated "immediately" upon being furnished proof that the insured was totally and permanently disabled, *and that such a state of disability has existed "for a period of six months."* As stated in Missouri State Life Insurance Company v. Nidiffer, 168 Tenn. 584, 79 S. W. (2d) 1024, "Before there can be anything due under the policy for total and permanent disability, such disability must have lasted for six months." The period of permanent disability covered has a definite time of beginning. It is not from the time disability in fact begins, but from the time the insured furnishes the company due proof that total

and permanent disability has been existent for a period of six months. It is only after expiration of that period and the furnishing of proof thereof that the liability of the company to pay the disability compensation accrues. There is no room for indulging in possible constructions of the language of the coverage contracted for. It is clear and unambiguous, and no other language of the policy has the effect of rendering it ambiguous. The following statement in Bergholm v. Peoria Life Insurance Company, 284 U. S. 489, 52 Sup. Ct., 230, 76 L. ed. 416, (a case in which the disability provisions were sufficiently similar to those of the present case to invoke the same principal with respect to liability) is in point:

"Here the obligation of the company does not rest upon the existence of the disability; but it is the receipt by the company of proof of the disability which is definitely made a condition precedent to an assumption by it of payment of the premiums becoming due after the receipt of such proof. The provision to that effect is wholly free from the ambiguity which the court thought existed in the Marshall policy."

The language of the provisions of the policy with respect to the company's obligation to pay total and permanent benefits has no doubtful meaning and therefore affords no basis for invoking the just and well established rule that it is to be construed either most favorably for the insured or most strongly against the company. The rule furnishes no warrant for importing unusual and unnatural meanings into the plain words of the contract provision stipulating the condition upon which the company will pay for total and permanent disability.

■ The condition of the policy that it shall cease if the stipulated premiums are not paid as provided for is of the very essence and substance of the contract. Bergholm v. Peoria Life Ins. Co., supra. It is undisputed that for a period of four months of the seven months' period elapsing between the inception of disability and the making of "due proof," no premiums were paid. It is therefore obvious that the policy had already terminated at the time Rios attorney furnished proof of six months' total and permanent disability to the company.

It appears from what has been stated that we are in accord with the holding of the Beaumont Court and the following quoted reasoning upon which it is predicated:

"Here, under the terms of the policy, the insurance ceased to exist at the end of the period for which the last premium was paid. That was on November 30, 1931. No premiums were paid after that date. So the certificate ceased to be effective after that date. If so, then no cause of action existed. * * * As the disability benefits were to be had only by virtue of the certificate, and as the life of the certificate depended upon the payment of monthly premiums, and these premiums were not paid, it is clear, we think, that, in order to have a right to the disability benefits, the premiums on the policy must have been paid during the six months of disability required before proof of such disability and demand for payment of the benefits could be made."

The following cases, in addition to the opinion of the Court of Civil Appeals in the Johnson case, support the conclusions we have reached: Bergholm v. Peoria Life Ins. Co. and Mo. State Life Ins Co. v. Nidiffer, both supra; Johnson v. Mo. State Life, 207 N. C. 512, 177 S. E. 646; Missouri State Life Ins. Co. v. Hardin, 168 Tenn. 340, 78 S. W. (2d) 832; and McCutchen v. All States Life Ins. Co. 229 Ala. 616, 158 So. 729.

Rios presents as in conflict with the foregoing cases: Missouri State Life Ins. Co. v. Foster, 188 Ark. 1116, 69 S. W. (2d) 869; Strauther v. General Amer. Life Ins. Co. (Mo. Ct. of Apps.), 141 S. W. (2d) 128 and Schuerman v. General Amer. Ins. Co. 232 Mo. Ct. of App. 352, 106 S. W. (2d) 920. The first two cases presented (two of the justices dissenting in the first) are distinguishable from the present case in that the policies involved were kept in force by the continued payment of premiums from the beginning of disability for the full period of six months thereafter. In the last of the three cases the court concedes that "the policy seems to provide there could be no recovery unless the insurance was in force at the time the proofs were furnished," but proceeds to adopt a construction at variance with the language, founded . apparently upon a theory that hardship would result from giving the plain language its literal meaning.

We are not in accord, for the reasons stated above, with the view of the Court of Civil Appeals that the company was liable upon the theory of its existent, but unmatured, liability during the period from the inception of disability (the policy then being in force) and so continued in its unmatured state with-

out further payment of premiums until due proof of six months total and permanent disability was furnished by Rios, at which time the liability was matured, and then stood established as of the date of the beginning of liability. The contract sets forth no such contingency of liability, and its language expresses no such meaning. We find no basis in the light of the clear language of the contract, for importing such meaning into it.

It is unnecessary, in view of what has been stated, to determine when the insured's employment terminated or to discuss any other question.

The judgment of the Court of Civil Appeals is reversed, the judgments below are set aside, and judgment is here rendered in favor of the petitioner.

Opinion adopted by the Supreme Court July 1, 1942.

Rehearing overruled October 7, 1942.