**DAIRYLAND COUNTY MUTUAL INSURANCE COMPANY OF TEXAS, Appellant,**

v.

**Allen R. MASON, Appellee.**

**No. 7170.**

Court of Civil Appeals of Texas, Beaumont.

Nov. 5, 1970.

Orgain, Bell & Tucker, Beaumont, for appellant.

Seale & Stover, Jasper, for appellee.

STEPHENSON, Justice.

This is an action upon an automobile insurance policy to recover the value of a damaged automobile. Plaintiff, Allen R. Mason, bought this policy of insurance written by defendant, Dairyland County Mutual Insurance Company of Texas, through its agent, C. R. Guy. Trial was before the court and judgment was rendered for plaintiff. No findings of fact or conclusions of law were made by the trial court. The parties will be designated here as they were in the trial court.

Plaintiff alleged, in substance: That by its previous conduct, custom and usage, defendant waived its right of forfeiture or cancellation of its policy of insurance for late payment of premiums. That by the actions of defendant and its authorized agents, plaintiff was induced to believe such forfeiture or cancellation provision would not be enforced. That defendant is estopped to assert cancellation or forfeiture as a defense.

Defendant has a series of points of error contending the policy in question had lapsed as a matter of law, and that there was no evidence to support a finding of waiver or estoppel, and that the evidence was insufficient to support such findings. We apply the usual rules required of us as to consideration of evidence in passing upon these points.

The premium notice mailed by defendant to plaintiff contained the following on its face: "NO GRACE PERIOD! IF THE PREMIUM IS NOT RECEIVED IN OFFICE BY DUE DATE YOUR COVERAGE EXPIRES." Apparently there is no provision in the policy itself which controls the question before this court. C. R. Guy's agency contract contained the usual provision that he had no authority to alter the terms of the insurance contract. It is un-

disputed that this premium payment was not in defendant's office May 18, 1969, and that plaintiff knew when the payment was due and that the premium notice contained the provision set out above. It is apparent that plaintiff did not comply with the strict terms of the contract and cannot prevail unless the doctrine of waiver and estoppel has application. The Supreme Court of Texas made the following statement in reference to this doctrine in Southland Life Insurance Co. v. Lawson, 137 Tex. 399, 153 S.W.2d 953, 957 (1941):

"In our opinion, an insurance company can waive, by custom, the contractual obligation of its insurance policy with reference to the payment of premiums at the home office of the company, etc., and in such instances the insurance company will not be permitted to stand on the insurance contract, where to do so would operate as a fraud on the insured or result in an injustice to him. In regard to such matter, we think the rule is that waiver by custom does not change the original contract. It merely operates to estop the company from asserting its rights thereunder. The doctrine of waiver in such instances is only another name for the doctrine of estoppel. It can only be invoked where the conduct of the insurance company has been such as to induce action in reliance upon it, and where it would operate as a fraud on the insured, or an injustice to him, if the company were allowed afterwards to disavow its waiver and enforce the policy conditions."

Plaintiff relies upon his contention that he was permitted to make payments to C. R. Guy and had not been required to make payments to defendant in Austin, Texas, before the due date of the payment in order to keep his insurance in force. We proceed to examine the evidence concerning the payment of premiums to determine whether or not estoppel and waiver are applicable. The testimony is not clear as to how many payments plaintiff has made on this policy of insurance. The evidence shows the policy written in December, 1966, originally covered another automobile and that plaintiff's father was the named insured. It was amended in April, 1968, to cover the automobile damaged May 20, 1969. C. R. Guy testified plaintiff was paying monthly in May of 1969, and had been doing so for "some several months before that." The testimony of plaintiff was to the effect that the policy was in his name for two years at the time of the wreck. We feel that a reasonable interpretation of the evidence is that seven quarterly payments were made and three monthly payments were made by plaintiff for a total of ten payments during the two-year period. The evidence also showed: That plaintiff made the payment due March 16, 1968, to C. R. Guy on March 18, 1968, for a three-month period. That plaintiff made the monthly payment due April 18, 1969, on April 18, 1969, to C. R. Guy. According to the last notice plaintiff received before this collision, payment was due May 18, 1969. Plaintiff carried $40.00 in cash, a monthly payment, to the office of C. R. Guy in Kirbyville, Texas, late in the day, May 19, 1969. Mrs. C. R. Guy issued plaintiff her regular office receipt when she accepted the money. The night of May 20, 1969, the automobile listed in the policy of insurance was involved in a wreck, resulting in a total loss.

Plaintiff also gave the following testimony: He mailed some of the payments to Austin and he paid some of the payments to C. R. Guy who had told him that as long as he (Guy) had the money plaintiff was covered. That he had paid Mr. Guy several times and the next month would receive a renewal slip from defendant. He received the same kind of renewal slip the following month whether the payment had been mailed to Austin or paid to C. R. Guy. That he was late getting his check in May, 1969, and the 18th fell on Sunday, so he carried the money to C. R. Guy on May 19th. That plaintiff had receipts to show "late payments" on March 18, 1968, and April 18, 1969, but could find no other. He remembered making payments late in addition to those times. His best recollec-

tion was three or four times. He relied upon what Mr. Guy told him and also the fact that he had made other late payments to believe his insurance was still in force. Mr. Guy also told him if the payment was a day or two late it wouldn't hurt anything.

C. R. Guy testified: He wrote the policy through the defendant company. That plaintiff made the May payment in cash, May 19, 1969, at his office and his wife (Guy's) issued the receipt. He wrote his check to defendant that same night and posted it in the Kirbyville Post Office at eight o'clock, a. m. May 20, 1969. C. R. Guy called the defendant as soon as he heard of the wreck on May 21, 1969. Defendant returned the payment to C. R. Guy and denied coverage and liability. There is no way for money paid to Guy in Kirbyville to get to defendant in Austin the same day. There had been other occasions when payments were made by plaintiff to him late. He would mail them to Austin, the defendant would accept them and continue to issue renewals. He called defendant company as soon as he heard of this accident and was told by Mrs. Burnett (Barnett) that as long as the letter containing the check was postmarked before the accident, it was covered. He had been told that same thing before by defendant. The next day his check was returned to him with a note that there was no coverage.

Morris F. DeGroot testified as follows: He is the manager and secretary-treasurer of defendant company and the only officer living in Texas. His office is in Austin. There is no grace period for this coverage, and if the premium is not in defendant's office in Austin on time the policy lapses and he is the only person authorized to waive the lapse of the policy. That defendant has the option to reinstate the policy within ten days. As a practical matter, even though none of the employees in the office are authorized to extend the rules, many times payments are a day late and the money is accepted, the policy continues in force and he would never hear anything about it. It is not a violation of the rules for the employees to accept the payments and post them without getting his permission. He would not dispute the fact that plaintiff had been late before and the money had been accepted. If someone in the office accepts a payment a day or two late, the same kind of notice goes to the insured in the mail as if the payment had been made on time. It is an everyday occurrence for the people in defendant's office to receive payments that are late and accept and post them.

■ Applying the language and rule of the Lawson case, supra, to the factual situation in the case before us, we have concluded the defendant waived by custom and practice the strict requirement as to payment of premiums, and that a contrary holding would result in an injustice to plaintiff. Defendant is estopped to disavow its waiver and enforce such payment provision under the facts of this case. This determination is based squarely upon waiver and estoppel because of the custom and practice between these parties, established by defendant. We do not hold that C. R. Guy had authority to alter the terms of this policy, nor to effect a waiver of its terms by his actions above. Considering the evidence favorable to the implied finding of waiver and estoppel by the trial court, the "no evidence" point is overruled, and considering the entire record, the insufficiency of the evidence point is overruled. Border State Life Ins. Co. v. Monk, 103 S.W.2d 825 (Tex.Civ.App.—El Paso, 1937, error dism.); Supreme Forest Woodmen Circle v. Hornsby, 107 S.W.2d 393 (Tex.Civ.App.—Fort Worth, 1937, no writ); Grand Lodge Colored Knights of Pythias of Texas v. Carter, 100 S.W.2d 742 (Tex.Civ.App.—Waco, 1936, no writ); Winters Mutual Aid Ass'n v. King, 77 S.W. 2d 284 (Tex.Civ.App.—Austin, 1934, no writ); Southern Travelers' Ass'n v. Masterson, 48 S.W.2d 771 (Tex.Civ.App.—Dallas, 1932, error dism.); Wichita Home Ins. Co. v. Montgomery, 4 S.W.2d 1041 (Tex. Civ.App.—Amarillo, 1927, error dism.).

█ Defendant cites the case, National Life & Accident Ins. Co. v. Casillas, 63 S.W.2d 396 (Tex.Civ.App.—San Antonio, 1933, error dism.), in support of its position. The court in that opinion classified the policy sued upon as a "month-to-month life and accident" policy to distinguish it from the usual life policy. That policy provided specifically that the premium was due in advance on the first day of each month, and if not paid on or before the due date, the policy lapsed and the insurance is void until the policy is revived and reinsured. There is no similar provision in the policy of insurance before us. Such policy was attached to the defendant's answer and showed it was for a period of one year, from December 16, 1966, to December 16, 1967. The policy shows the total premium to be $155.00 for the policy period, and makes provision to be continued in force for successive policy periods by payment of the required renewal premiums in advance. It is then written: "If Renewed, the successive policy periods shall be —— calendar months." No number was filled in that blank. No mention is made in the policy itself as to how the premium should be paid, and we have only the form renewal notices, which gave the insured the option of paying annually, semi-annually, quarterly, or monthly. We do not interpret this policy to be a "month-to-month" policy, but to be one from year to year, with an optional method of premium payments.

█ Defendant has two points of error that it was error for the trial court to permit C. R. Guy to testify as to hearsay statements by two employees of defendant, and permit plaintiff to testify to statements made by C. R. Guy. These statements made, all of which are set out in the testimony listed above, although they are not admissible to prove authority of such employees and C. R. Guy to waive any provision of the contractual obligation, they were admissible to show the custom and practice of defendant in reference to premium payments. In any event, this case having been tried before the court, and there being no findings of fact and conclusions of law, it is assumed the court disregarded improper evidence, in arriving at its determination and judgment. Creager v. Douglas, 77 Tex. 484, 14 S.W. 150 (1890); Sharkey v. Hollums, 400 S.W.2d 353 (Tex.Civ. App.—Amarillo, 1966, error ref., n. r. e.).

Affirmed.

KEITH, Justice (dissenting).

I respectfully dissent. Under the specific terms of the policy contract sued upon, all coverage upon plaintiff's vehicle expired at 12:01 a. m., on May 18, 1969, and plaintiff made no effort to tender any payment until "late in the day of May 19, 1969" when he tendered cash to a local agent. The majority admits, as it must, that "there is no way for money paid to Guy in Kirbyville [even then more than twenty-four hours past due] to get to defendant in Austin the same day"; and, as a matter of fact, the tendered payment did not arrive until May 21, after the destruction of plaintiff's vehicle.

The policy involved is one of the so-called "month-to-month" type of policy and our courts have held that prompt compliance with the specific payment provisions therein found are not waivable by unauthorized acts of agents. National Life & Accident Ins. Co. v. Casillas, 63 S.W.2d 396, 397 (Tex.Civ.App.—San Antonio, 1933, error dism.); Commonwealth Life & Accident Ins. Co. v. Nelligan, 220 S.W.2d 209, 213 (Tex.Civ.App.—Galveston, 1949, ref. n. r. e.); National Bankers Life Ins. Co. v. Bunnell, 227 S.W.2d 851, 852 (Tex.Civ. App.—Ft. Worth, 1950, no writ).

In *Bunnell,* supra, the court said:

"The binding effect of the continued contract was dependent upon the acceptance by appellant [insurer] of the premiums tendered by appellee. The option was with appellant and it so exercised it under the contract. Appellant's option in this case is not unlike its option to accept or reject an application in the first place.

American Life Ins. Co. v. Nabors, 124 Tex. 221, 76 S.W.2d 497."

Not having paid the premium as and when due, plaintiff pleaded waiver of the right of forfeiture or cancellation of the policy, the entire allegation being set out in the margin.[1] The majority concedes that, "It is apparent that plaintiff did not comply with the strict terms of the contract and cannot prevail unless the doctrine of waiver and estoppel has application." [Majority opinion, p. 483.] There is no question of forfeiture or cancellation in this case, notwithstanding the pleadings noted above. At the time plaintiff paid his money to Guy he had no coverage—not by virtue of cancellation or forfeiture—but by simple expiration of the policy period in the contract itself.

*At that time, there was no contract between the parties.* This quotation from Smith v. McKnight, 240 S.W.2d 368, 372 (Tex.Civ.App.—Amarillo, 1951, no writ), is deemed appropriate. After discussing the elementary proposition that for waiver to be applicable, there must be an intentional relinquishment of a known right,[2] the court said:

"Upon termination of the contract, there then existed no 'known right' subject to relinquishment. It appears that there may be soundly added to the expressions in regard to the principle of waiver the following thought: *Waiver creates no right, it merely acts in regard to an existing right.* You cannot effect a contract or an extension of a contract by waiver. You can only waive the existing rights thereunder." (Emphasis supplied.)

Similarly, the doctrine of equitable estoppel, or estoppel in pais, does not of itself create a new right or give a cause of action. It operates always as a shield and never as a sword. 28 Am.Jur.2d, Estoppel and Waiver, § 33, p. 637.

There is, of course, a distinction between waiver and estoppel, as was pointed out in Massachusetts Bonding & Ins. Co. v. Orkin Exterminating Co., 416 S.W.2d 396, 401 (Tex.Sup., 1967), quoting from Wirtz v. Sovereign Camp, W.O.W., 114 Tex. 471, 268 S.W. 438, 441 (1925) as follows:

" 'Waiver presupposes full knowledge of existing right, while estoppel arises where by fault of one, another has been induced to change his position for the worse.' "

Plaintiff's position worsened only through his own fault—not any act or omission of the defendant. The premium notice which he had received contained this wording: "NO GRACE PERIOD! IF PREMIUM IS NOT RECEIVED IN OFFICE BY DUE DATE YOUR COVERAGE EXPIRES." In the most prominent position and in extremely large type upon the face of the notice, these words appeared: "MAIL THIS NOTICE WITH PREMIUM TO COMPANY OFFICE."

Plaintiff offered in evidence a portion of a rate manual which contained this language:

"2. The premium for the renewal of this policy is due and payable to the Company not later than the due date of the premium notice. Payment shall be considered as having been made upon receipt and acceptance of the premium at the Company Office and not at the time of mailing by the insured.

1. "By previous conduct and by custom and usage, defendant waived the right of forfeiture or cancellation of said policy for late payment of premiums, and by the actions of defendant and its authorized agent, plaintiff was induced to believe that the stipulation in the policy as to forfeiture or cancellation of said policy for non-payment of premiums to the company's home office on specified dates would not be enforced, and defendant is estopped to assert forfeiture or cancellation as a defense herein."

2. Texas & Pac. Ry. Co. v. Wood, 145 Tex. 534, 199 S.W.2d 652, 656 (1947); Ford v. Culbertson, 158 Tex. 124, 308 S.W.2d 855, 865 (1958).

"3. The insurance coverage shall expire as of 12:01 A.M. on the due date of this renewal, unless the premium is paid when due."

The reliance upon Southland Life Ins. Co. v. Lawson, 137 Tex. 399, 153 S.W.2d 953 (1941) is misplaced. Justice Hamilton in *Orkin,* supra, discusses the *Lawson Case,* and in doing so cites American Standard Life Ins. Co. v. Denwitty, 256 S.W.2d 864 (Tex.Civ.App.—Dallas, 1953, error dism.) with approval. *Denwitty,* as in our case, presented the question of alleged payment of an overdue premium to a local agent when the policy provided for payment to the company. There the court said:

" 'The rule seems to be well settled in this state to the effect that, when the limitation is expressed in the application or in the policy in such way that the insured is charged with knowledge thereof, the company will not be estopped by the wrongful acts of the agent.' Texas State Mutual Fire Ins. Co. v. Richbourg, Tex. Com.App., 257 S.W. 1089, 1090."

It has long been recognized in Texas that "the condition of the policy that it shall cease if the stipulated premiums are not paid as provided for is of the very essence and substance of the contract." General American Life Ins. Co. v. Rios, 139 Tex. 554, 164 S.W.2d 521, 523 (Tex.Com.App., 1942). And, the majority recognizes plaintiff's knowledge of his obligations to pay the premium at the time and in the manner provided in the policy and his failure to comply with the provisions.

Notwithstanding plaintiff's pleading of waiver and estoppel as to forfeiture and cancellation—and this at a time when there was no contract then in effect between the parties, I find no evidence from any source in this record which indicates that there was any conscious relinquishment of any known right by the defendant. It had no obligations, *at that time,* to plaintiff and it had no rights to relinquish. Similarly, I find no evidence of estoppel. The very notice of the overdue premium which plaintiff carried to Guy's office contained all of the information he needed to determine his contractual rights with the defendant. There was not, and I repeat, *at that time,* any contractual agreement in existence between the parties, nor was there any misrepresentation made to plaintiff.

In Hallmark v. United Fidelity Life Ins. Co., 155 Tex. 291, 286 S.W.2d 133, 136 (1956), the court said:

"It is generally essential to the application of the doctrine of equitable estoppel that the person claimed to be estopped shall have had full knowledge of the real facts at the time of his representation, concealment or other conduct relating thereto and alleged to constitute the basis of the estoppel."

I find no evidence in the record of any misrepresentation, concealment, or other conduct on the part of the defendant upon which the doctrine of estoppel in pais can be based. Cf. Champlin Oil & Refining Co. v. Chastain, 403 S.W.2d 376 (Tex.Sup., 1965), and particularly the dissent of Justice Pope at p. 395. The only reason plaintiff assigns for his failure to pay the premium when due is that he did not have the money with which to pay it. Such an excuse does not, I submit, authorize this court to afford plaintiff coverage to which he is clearly not entitled as a matter of law.

The majority rejects the concept of the "month-to-month" type of coverage afforded to the plaintiff, and attempts to distinguish the *Casillas Case,* supra (63 S.W.2d 396, 397) upon the facts. Yet, the very evidence upon which the majority decision is based shows that our plaintiff had so treated the policy almost from its date of original issue.

At any time before noon on May 18, 1969, under the plain language shown on the notice which plaintiff had in his possession, he

had five options open to him. He could pay to the defendant, at its office in Austin, Texas, one of the following premiums for coverage for the periods of time indicated: (a) $40.00 for one month; (b) $111.00 for three months; (c) $210.00 for six months; or (d) $398.00 for twelve months. Had he chosen either of these options, he would have had coverage upon his vehicle at the time of its loss. Instead, he selected the fifth option of doing nothing and making no payment whatsoever. In so doing, he let the contract expire—and in so doing, he was entirely within his rights and was not relying upon any statement of the defendant.

This court has now made a new contract for the parties; but, long ago, Judge Brown in Maryland Casualty Co. v. Hudgins, 97 Tex. 124, 76 S.W. 745, 747, 64 L.R.A. 349 (1903), laid down the rule prohibiting such action, saying: " * * * the courts cannot undertake to make a new contract, in disregard of the plain and unambiguous language used by the parties." Or, as stated more recently by Justice Smith in Republic National Life Ins. Co. v. Spillars, 368 S.W.2d 92, 94, 5 A.L.R.3d 957 (Tex.Sup., 1963): " * * * where the language of an insurance contract is plain, it must be enforced as made." See also, American-Amicable Life Ins. Co. v. Lawson, 419 S.W. 2d 823, 826 (Tex.Sup., 1967).

In the determination of this case, the majority relies upon a motley collection of cases, most of which originated during the days of the economic depression of the nineteen thirties. Actually, what the majority has presented is no answer at all to the problem which we face. It is, instead, what the logicians call a tautology—repeating the same statement in different words so that a thing seems to be a consequence of itself—the finagled factor reasserted. There has been a great change in the law of insurance since those days, and it seems to me that we should not blindly extend these old doctrines of doubtful validity unless absolutely compelled to do so in order to avoid a conflict in opinions.

Believing that the case is fully developed and that there is no liability upon the expired policy, as a matter of law, I would reverse the judgment of the trial court and render judgment for the defendant.