**ORKIN EXTERMINATING COMPANY, Inc., Appellant,**

v.

**GULF COAST RICE MILLS, Appellee.**

No. 3798.

Court of Civil Appeals of Texas.

Waco.

Feb. 9, 1961.

Rehearing Denied March 2, 1961.

The Kempers, John D. Richardson, Houston, for appellant.

Carnes & Martin, Houston, for appellee.

McDONALD, Chief Justice.

Gulf Rice Mills filed this suit against Orkin Exterminating Company. Plaintiff alleged that it entered into a written contract with Orkin in 1952 under the terms of which Orkin was to exterminate and control insects, rodents, and pests in plaintiff's mill; that in August, 1955, Orkin sprayed plaintiff's mill with an insecticide or pesticide known as Lindane; that Lindane is poisonous and prohibited by law to be so used; that the application of Lindane to the mill rendered the rice unusable; that the use of Lindane on the interior of the mill was negligence; caused the rice to be unfit for use and adulterated; caused the Federal authorities to prohibit sale of the rice; caused the rice to be injurious to health and unsafe within the meaning of the Federal Food and Drug Act. 21 U.S.C.A. § 301 et seq.; that the foregoing were proximate causes of damages suffered by plaintiff which were alleged to be some $96,000 (expense for remilling the rice and

loss of profits incurred while so remilling the rice.)

Plaintiff further alleged that Orkin defaulted and breached its contract in some 17 particulars, summarized: 1) in not controlling insects and mice; 2) in not exterminating in a manner to minimize the possibility of U. S. Food and Drug Administration citing plaintiff; 3) that it did not conduct inspections as agreed; 4) that it did not fumigate as needed; 5) that it used Lindane which did not conform to Federal, State and local laws and ordinances; 6) that it used Lindane which was not acceptable to the rice milling industry because it would contaminate the rice and the mill and subject the mill to civil and criminal proceedings; 7) that it failed to furnish a certificate of insurance showing public liability in amount of $250/500,000.; and property damage insurance in amount of $100/100,000.

By reason of the foregoing breaches of contract, plaintiff alleged its damages at $96,000.

Plaintiff further alleged that Orkin defaulted on the express warranty, and implied warranty of its contract, in failing to provide effective insect and rodent control in a safe manner, acceptable to the rice industry; for breach of which plaintiff alleged its damages at $96,000.

Plaintiff prayed for interest from January, 1946; as well as $200,000. exemplary damages for employing Lindane, which plaintiff alleged Orkin knew was a harmful poison, use of which was prohibited by Federal, State and local laws.

Defendant Orkin answered by general denial; contributory negligence; unavoidable accident; alleged that the injuries were caused solely by government agencies operating independently of defendant; alleged that plaintiff's damages resulted from plaintiff's voluntarily shutting its mill down and remilling the rice, without legal liability to do so; that the government inspector of the Food and Drug Administration requested plaintiff to remill its rice, threatening suit if it did not do so, alleging violation of the law in use of Lindane; and that plaintiff *voluntarily* compromised and settled the government's threatened suit, without being legally bound to do so, and without seeking a judicial determination of the government's claims.

Trial was to a jury.

Defendant filed motion for instructed verdict contending, among other things, that no negligence was shown on defendant's part; that there was no evidence to justify a finding of facts supporting any legal theory of recovery against defendant; and that plaintiff voluntarily remilled its rice without seeking a judicial determination of its liability to do so. This motion was overruled by the Trial Court.

Plaintiff made motion for instructed verdict, contending, among other things: 1) that defendant breached its contract with plaintiff in a number of particulars, and that the undisputed evidence establishes defendant's liability for plaintiff's damages which arose out of these breaches; 2) that the undisputed evidence shows defendant breached its express and implied warranty in its written contract in failing to provide effective insect and rodent control in a safe manner; 3) and in failing to carry out the provisions of its written contract, in using Lindane, which was prohibited by law to be so used.

The Trial Court entered an order granting in part and denying in part plaintiff's motion for instructed verdict. In such order the Court ordered the submission to the jury of issues inquiring whether Orkin's actions regarding the use of Lindane constituted negligence; whether such negligence was a proximate cause of the damages of plaintiff; and what damages, if any, plaintiff suffered from loss of profits. The Court found that plaintiff's damages for remilling the rice were $46,245.32. (The court further ordered issues concerning the plaintiff's right to recover interest as damages and punitive damages).

The Trial Court then entered an order in Limine, in which the court ordered defendant Orkin not to make argument to the jury "upon the following matters which have been found and concluded as matters of law by the court"; 1) counsel may not argue, comment or remark in any way so as to question the legality, validity or propriety of any acts or omissions of Walter R. Moses or the Federal Food and Drug Administration. 2) Counsel may not argue, comment or remark in any way concerning the necessity of the remilling of the rice by the plaintiff. 3) Counsel may not argue, comment, or remark in any way upon what the law is, or whether any violation of law occurred on the part of any person. 4) Counsel may not argue, comment, or remark on any issues contained in the breach of contract case herein.

Defendant requested the submission of a number of issues, among which were: 1) issues inquiring if plaintiff acted as a volunteer without legal obligation to do so, in incurring the expense in remilling the rice; 2) and whether or not the actions of Inspector Moses in requiring the remilling of the rice was the sole proximate cause of plaintiff's injury.

The Trial Court refused all issues requested by defendant and submitted issues to the jury which, in answer thereto, found:

1) Application of Lindane by Orkin to plaintiff's rice mill in August, 1955, was negligence.

2) Such was a proximate cause of plaintiff's damages.

3) Gulf Rice Mill lost profits as a result thereof in the amount of $40,000.

4) Orkin's application of Lindane to the rice mill was gross negligence.

5) For which $10,000. exemplary damages should be granted.

6) and 7) Gulf Rice Mills should recover interest from June 7, 1956.

Defendant moved for judgment non obstante veredicto and alleged, among other things: 1) the findings of the jury cannot afford a valid basis for judgment for the plaintiff; 2) the undisputed evidence and the law conclusively show that no legal liability did exist as asserted by the Federal Agency; further that plaintiff incurred its damages by voluntarily compromising the litigation threatened by the Federal Agency, when no legal validity existed as to such threats; and plead for disregard of the findings on exemplary damages.

The Trial Court overruled such motion, except as to the findings on gross negligence and exemplary damages.

The Trial Court then entered judgment:

"and the Court having found breaches of their contract by the defendant, which breaches were proximate causes of the damages sustained by plaintiff; and the Court having found that defendant defaulted upon its express warranty proximately causing plaintiff's damages; and the Court further finding that * * * its implied warranty was breached, proximately causing damages to the plaintiff; and the Court further finding and being of the opinion that notwithstanding the aforesaid breaches of contract and warranty, the actual damages of $86,245.32 were proximately caused by negligent acts of the defendant as shown by the jury's answers to the special issues."

"It is therefore ordered * * * that (plaintiff) recover from the defendant * * * $105,219.29, being composed of actual damages in the amount of $86,245.32 plus interest from 7 June, 1956 at 6% in the sum of $18,-973.97 * * *."

Defendant's motion for new trial was overruled by the Trial Court.

Defendant appeals on 42 points, included among which are: 1) the evidence is insufficient to justify any finding of facts

supporting any legal theory of recovery; 2) the Trial Court erred in granting the partially instructed verdict for plaintiff, thereby withdrawing from the jury any issue as to whether defendant breached its contract, and/or defaulted upon its express or implied warranty.

The record reflects that plaintiff Rice Mills entered into a written contract with defendant Orkin Exterminating Company in 1952, under which Orkin was to exterminate insects and rodents in plaintiff's mill; that the insect and rodent situation became so bad that in August, 1955 Orkin sprayed with an insecticide known as Lindane. Thereafter, the Federal Food and Drug Administration and the State Health Department and the City of Houston made some investigation of the use of Lindane at the Rice Mill. All agencies finally in effect delegated to Inspector Moses of the Federal Food and Drug Administration the right to act for them. Inspector Moses told the Rice Mill that the use of Lindane had violated the law; that the Mill was in serious trouble; that the Mill could ship no rice; that such rice was unfit for human consumption; that the rice would be condemned; the buildings padlocked and the Mill and its offices subject to prosecution both civilly and criminally. Inspector Moses' (and the government's) position was that no amount of Lindane was permitted on rice; that no tolerance was established for it, and for that reason the rice was contaminated, and would have to be re-milled. The plaintiff Rice Mill relied on what Inspector Moses told it (speaking for the Federal, State and City Health Departments), and without contesting, disputing, or litigating, the validity or legality of the claims of Inspector Moses and/or the 3 Health Departments, plaintiff proceeded to remill the rice at an expense of some $46,245. and during such period lost profits which the jury found to be $40,000.

As further pertinent, we note that the record reflects that some 95% of the plaintiff's rice was intended for export to a foreign country. The record further reflects that a great many samplings of the rice were tested for Lindane and that the results of such samplings ran from *none* up to *3.6* parts of Lindane per million parts of rice. It is further reflected that such amounts are not injurious to health, in any manner.

The Trial Court granted instructed verdict for plaintiff on the contract and breach of express and implied warranty phases of this case. Our examination of the record leads us to the conclusion that there were numerous disputed factual issues in the contract and breach of warranty phases of the case, and that the Trial Court erred in granting an instructed verdict in these respects.

This brings us to a consideration of the tort phase of the case. The Trial Court's submission of issues to the jury is predicated upon the Trial Court's finding that the law had been violated when Lindane was sprayed by Orkin in plaintiff's rice mill. The fact that Inspector Moses certified that the law was violated did not foreclose such matter. (While plaintiff contended that the Federal, State and City of Houston laws had been violated both as to contamination by Lindane and contamination by filth etc., the case was actually developed and tried on the theory that the use of the Lindane violated the Federal law; and as noted, the State and City of Houston Health Departments, left the matter for both of their agencies, up to Inspector Moses of the Federal Agency. In any event, the proof of violation of the State and local laws, both as to use of Lindane and filth, is inadequate. The City of Houston Ordinances were not introduced in evidence). This brings us to the question of whether the Federal law was in fact violated—as contended so earnestly by Inspector Moses on the trial, and by plaintiff's brief in the instant appeal. The Federal Statutes principally involved are Sec. 342, 346a, 321, 381, 21 U.S.C.A. (See also 1954 U.S. Code, Congressional and Administrative News; and 1955 Code of Federal Regulations). Sec. (12) 3.41 Title 21, 1955

Code of Federal Regulations provides that such acts shall not become effective for Lindane on grain until *October 31, 1955*.[1] (Application of the Lindane to the rice was in August, 1955). Moreover, (See Section 1 (§ 321, Title 21 U.S.C.A.) 1954 U.S.Code Cong. & Adm.News, p. 2631), it appears that the statute does not attempt to regulate residue from pesticide chemicals which remain in or on *processed* commodities; and that food *processed* by operations such as *milling* are not subject thereto."[2]

Finally, 95% of plaintiff's rice was intended for export, and under Section 381[3] is not deemed adulterated under the instant chapter U.S.C.A.

From the record before us, we cannot say that the use of Lindane, in the quantities used, and under the factual situation here involved, was violative of the Federal law.

Moreover, as noted, the record fails to reflect the presence of Lindane in the plaintiff's rice in any quantity injurious to health.

From what has been said, it is our view that plaintiff has not shown a violation of Federal, State, or local law, and that the record does not support recovery on the tort phase of the case. See also: Florida Citrus Exchange v. Folsom, 5 Cir., 246 F.2d 850; United States v. Lexington Mill & Elevator Co., 232 U.S. 399, 34 S.Ct. 337, 58 L.Ed. 658; Wood Mfg. Co. v. United States, 7 Cir., 286 F. 84.

Defendant's contentions set up in this opinion, supra, are sustained, and the cause is Reversed and Remanded.

1. Code of Federal Regulations, Chap. 21, Sec. 120.1 Definitions & Interpretations (12) Section 3.41 "Pesticide Chemicals: extended dates on which statute shall become fully effective. "(a) * * * shall become effective on the dates specified for the following pesticide chemicals * * *. "(2) Effective date October 31, 1955. * * * *Lindane* * * * *Grain* (from treating storage bins)"

2. 1954 U.S.Code Congressional & Adm. News, p. 2631 "This bill does not attempt to regulate the residue from pesticide chemicals which may remain in or on processed, fabricated, or manufactured food other than by limiting the permissible residues on raw agricultural commodities. Food processed by operations such as cooking, freezing, dehydration, or *milling* would remain subject to section 406 rather than being regulated by this bill." "Section 406 contains a general declaration that any poisonous or deleterious substance added to food is unsafe except where the substance is 'required in the production thereof and cannot be avoided by good manufacturing practice.' However, in any case where such a substance is so required or cannot be so avoided (and this is so in case of the use of pesticide chemicals in the production of most raw agricultural commodities) Sec. 406 directs the Secretary of Health, Education, and Welfare to promulgate regulations limiting the quantity on the food to such extent as such Secretary finds to be necessary for protection of public health." p. 2632, 1954 U.S.Code Cong. & Adm. News.

3. Title 21 U.S.C.A. § 381(d). "A food, drug, device, or cosmetic intended for export shall not be deemed to be adulterated or misbranded under this chapter * * *." (U.S.C.A.1961 pocket part, p. 357).