ORKIN EXTERMINATING COMPANY, Inc., Appellant,

v.

GULF COAST RICE MILLS, Appellee.

No. 13998.

Court of Civil Appeals of Texas.

Houston.

Nov. 8, 1962.

Rehearing Denied Nov. 29, 1962.

See also 347 S.W.2d 250.

The Kempers, John D. Richardson, Houston, for appellant-appellee, Orkin Exterminating Co., Inc.

Carnes & Martin, Burke M. Martin, Houston, for appellee-appellant, Gulf Coast Rice Mills.

WERLEIN, Justice.

This suit was brought by plaintiff, Gulf Coast Rice Mills, against Orkin Exterminating Company to recover damages allegedly growing out of breach of contract

and negligence of the defendant. Both plaintiff and defendant have perfected appeals to this Court from the judgment rendered by the trial court on the second trial of the case. From the judgment of the District Court rendered on the first trial, an appeal was taken by the defendant and the judgment was reversed and the cause remanded by the Waco Court of Civil Appeals. Orkin Exterminating Company, Inc. v. Gulf Coast Rice Mills, Tex.Civ.App., 343 S.W.2d 768, dism. w. o. j.

A summary of plaintiff's pleadings, which were identical on both trials, is given in the opinion of the Waco Court. We quote from such summary as follows:

"Plaintiff alleged that it entered into a written contract with Orkin in 1952 under the terms of which Orkin was to exterminate and control insects, rodents, and pests in plaintiff's mill; that in August, 1955, Orkin sprayed plaintiff's mill with an insecticide or pesticide known as Lindane; that Lindane is poisonous and prohibited by law to be so used; that the application of Lindane to the mill rendered the rice unusable; that the use of Lindane on the interior of the mill was negligence; caused the rice to be unfit for use and adulterated; caused the Federal authorities to prohibit sale of the rice; caused the rice to be injurious to health and unsafe within the meaning of the Federal Food and Drug Act. 21 U.S.C.A. § 301 et seq.; that the foregoing were proximate causes of damages suffered by plaintiff which were alleged to be some $96,000 (expense for remilling the rice and loss of profits incurred while so remilling the rice.) "

The plaintiff also alleged violations of certain provisions of the laws of the State of Texas and ordinances of the City of Houston, and pled that Orkin had defaulted and breached its contract in some 17 particulars. These breaches are summarized in the opinion of the Waco Court of Civil Appeals. That Court on the record before it

held that the trial court erred in granting the partially instructed verdict for the plaintiff, thereby withdrawing from the jury any issues as to whether defendant breached its contract, or defaulted upon its express or implied warranty, since there were numerous disputed fact issues in the contract and breach of warranty phases of the contract. With respect to the tort phase of the case, the Court held that the record did not support any recovery.

On the second trial, the court overruled plaintiff's and defendant's motions for an instructed verdict, and submitted the case on seven special issues to which the jury found in substance: (1) that the application of Lindane in August, 1955, to the rice and premises of plaintiff was a proximate cause of damages sustained by plaintiff; (2) that such application to the rice may have rendered it injurious to health; (3) that such application was a proximate cause of plaintiff's damages, and (4) was negligence; (5) that such negligence was a proximate cause of plaintiff's damages; (6) that $27,790.07 was the sum of money that would fairly and reasonably compensate plaintiff for such damages as were caused by application of Lindane to the rice and premises of plaintiff, taking into account (a) cost of remilling the rice, (b) cost of cleaning plaintiff's premises and (c) difference between reasonable market value of rice before and after remilling, directly resulting from the application of Lindane in August, 1955; and (7) that $15,000.00 would fairly and reasonably compensate plaintiff for such damages as were directly and proximately caused by loss of use of plaintiff's mill reasonably and necessarily consumed in remilling the milled rice.

The trial court on hearing defendant's motion for judgment non obstante veredicto, reduced the jury's finding of $27,790.07 in answer to Special Issue (6) to $21,245.32 because plaintiff's pleading limited such items of damages to that amount, and otherwise overruled such motion and entered judgment for plaintiff in the total sum of $36,246.32, being the reduced amount of the

verdict plus $1.00 nominal damages for breach of contract insurance provisions.

Orkin contends that the trial court erred in overruling its motion for an instructed verdict and judgment non obstante veredicto when there was no evidence to support any cause of action or legal theory of recovery, and the law of the case and the evidence showed that the record did not support recovery on the tort phase of the case. Orkin states that the statement of the nature of the case on pages 768–772 of the opinion of the Waco Court is correct and it adopts the same. It asserts that the pleadings and evidence were the same in both trials, except for defendant's additional allegation as to the law of the case made in its third amended original answer filed subsequent to the opinion handed down by the Waco Court. The Waco Court's summary of the evidence adduced on the first trial is as follows:

"The record reflects that plaintiff Rice Mills entered into a written contract with defendant Orkin Exterminating Company in 1952, under which Orkin was to exterminate insects and rodents in plaintiff's mill; that the insect and rodent situation became so bad that in August, 1955 Orkin sprayed with an insecticide known as Lindane. Thereafter, the Federal Food and Drug Administration and the State Health Department and the City of Houston made some investigation of the use of Lindane at the Rice Mill. All agencies finally in effect delegated to Inspector Moses of the Federal Food and Drug Administration the right to act for them. Inspector Moses told the Rice Mill that the use of Lindane had violated the law; that the Mill was in serious trouble; that the Mill could ship no rice; that such rice was unfit for human consumption; that the rice would be condemned; the buildings padlocked and the Mill and its offices subject to prosecution both civilly and criminally. Inspector Moses' (and the government's) position was that no amount of Lindane was permitted on rice; that no tolerance was established for it, and for that reason the rice was contaminated, and would have to be remilled. The plaintiff Rice Mill relied on what Inspector Moses told it (speaking for the Federal, State and City Health Departments), and without contesting, disputing, or litigating, the validity or legality of the claims of Inspector Moses and/or the 3 Health Departments, plaintiff proceeded to remill the rice at an expense of some $46,245. and during such period lost profits which the jury found to be $40,000.

"As further pertinent, we note that the record reflects that some 95% of the plaintiff's rice was intended for export to a foreign country. The record further reflects that a great many samplings of the rice were tested for Lindane and that the results of such samplings ran from *none* up to 3.6 parts of Lindane per million parts of rice. It is further reflected that such amounts are not injurious to health, in any manner."

It is Orkin's contention that the facts in evidence pertaining to the negligence phase of the case are substantially the same as on the first trial, and that for such reason the specific findings of law made by the Waco Court are binding upon this Court as the law of the case. We think it unnecessary to set out such findings since they may be found on pages 771–772 of the Court's opinion. It is our view that there are some substantial differences between the evidence adduced at the first trial and at the second trial. Several medical witnesses testified on the first trial who did not testify on the second trial. The applicable ordinances of the City of Houston were not introduced on the first trial but were introduced on the second trial. On the second trial, there is no evidence that the City and State agencies delegated to Inspector Moses the right to act for them, although they may have agreed that Federal, State and City food

laws have been violated. Other differences will appear in the course of this opinion.

Plaintiff asserts that the answers of the jury to the special issues submitted constitute findings against Orkin on both the contract and tort phases of the case. Plaintiff requested certain more specific issues with respect to breaches of contract by Orkin, which were refused by the trial court. Any error of the trial court in refusing such issues has not been preserved by plaintiff and cannot be considered by this Court. The special issues submitted are limited to the use and application of Lindane and do not encompass any damages resulting from infestation of the rice by insects or rodents.

The contract does not make specific mention of Lindane. It specifies the scope of work and controlled service to be rendered by Orkin, and with respect to material to be used provides: "The materials used shall conform to Federal, State and local ordinances and laws, and shall be acceptable to the rice milling industry." Plaintiff argues that Orkin in using Lindane violated the provisions of the contract and breached its implied warranty to use proper materials, and was guilty of violations of the Federal Food, Drug, & Cosmetic Act, in that (1) it violated 21 U.S.C. § 342(a) (2) since no amount of Lindane whatever was permitted on milled rice; and (2) it violated 21 U.S.C. § 342(a) (1) in that it contained a poisonous and deleterious substance "which may render" the rice injurious to health. Plaintiff further contends that the undisputed evidence also shows violations of the Pure Food laws of the State of Texas and violations of the City of Houston ordinances.

Our inquiry is limited to alleged violations of the contract in the use and application of Lindane and to determining whether there is any evidence supporting the findings of the jury with respect thereto on either or both the contract and tort phases of the case. We are unable to say as a matter of law that Orkin breached its contract and implied warranty with respect to the infestation of the rice. In this respect we are in accord with the law of the case as determined by the Waco Court. But even if we were to hold that there were such breaches as a matter of law, we would still be unable to determine how much damage resulted therefrom in the absence of a jury finding, and no issues were submitted with respect to such damage, although there was some evidence that the rice would probably have been remilled because of the infestation regardless of the use of Lindane.

Plaintiff pleaded that the spraying of an insecticide or pesticide on plaintiff's rice, rendering it unfit for sale, was a violation of Sections 861–880 of the Houston City Ordinances of 1942. Section 868 of such Ordinances provides that for the purpose of Article IV, entitled "Pure Food & Drugs," an article shall be deemed adulterated (c) Food–(5) "If it contains any added poisons or other added deleterious ingredient which may render such article injurious to health * * *." Section 866 provides: "No person shall, within the City, manufacture for sale, have in his possession with intent to sell or exchange, any article of food or drugs which is adulterated or misbranded within the meaning of this article." Section 873 provides for prosecution and punishment for violations of the foregoing sections.

The record in this case reflects that Lindane is a poisonous or deleterious ingredient and that it was added to the rice by Orkin in blowing Lindane dust all over the rice in plaintiff's mill. It was not necessary to show that the food containing an added poisonous or deleterious substance must affect the public health in order for it to be condemned. All that need be established is that the added poisonous or deleterious substance must be such as may render such article injurious to health. United States v. Lexington Mill & Elevator Co., 232 U.S. 399, 34 S.Ct. 337, 58 L.Ed. 658. There is substantial evidence showing that Lindane in any quantity on rice may render such article injurious to health. The jury's finding to Special Issue No. 2 finds support in

the evidence. There is no assignment that any of the jury's findings are against the weight and preponderance of the evidence, and if there were such assignment, we could not consider it since defendant appeals from the court's refusal to grant an instructed verdict and judgment non obstante veredicto.

Plaintiff also pleaded that by spraying such rice and adulterating it and rendering it unfit for sale, Orkin violated Articles 4471 and 4472 of the Texas Revised Civil Statutes, and Articles 706, 707 and 717 of the Texas Penal Code. These provisions are substantially the same as those provided in the City of Houston ordinances. The violation of such statutes would subject plaintiff to criminal prosecution by the State, and to confiscation of the rice.

There is evidence in the record before us that Orkin applied Lindane to plaintiff's stores of rice, including both milled and unmilled rice. No claim for damages has been made by plaintiff for the unmilled rice, since it would necessarily have to be milled and milling would remove the Lindane.

The Waco Court on the record before it found in effect that there had been no violation of the Federal statutes relied upon by plaintiff. We think the record on this appeal shows certain violations. Sec. 342 provides: "A food shall be deemed to be adulterated—(a) (1) If it bears or contains any poisonous or deleterious substance which may render it injurious to health * * *; or (2) (A) if it bears or contains any added poisonous or added deleterious substance * * * which is unsafe within the meaning of section 346a * *." The exceptions in Section 342(a) (2) (A) do not apply to milled rice and are inapplicable to the facts of this case. Section 346 with respect to tolerances for poisonous ingredients provides: "Any poisonous or deleterious substance added to any food, except where such substance is required in the production thereof or cannot be avoided by good manufacturing practice shall be

deemed to be unsafe for the purposes of the application of clause (2) (A) of section 342(a) of this title." The evidence and the record before us show that Lindane was not required in the production of rice and that its use could have been avoided. Indeed, Lindane had been used only once in connection with plaintiff's mill from 1940 to 1955, and then it was used without the knowledge of the plaintiff or the health authorities. From the time of the application in August, 1955 Lindane has not been used down to the date of the second trial in 1961. Moreover, no allowance or tolerance was established for the use of Lindane on milled rice.

Plaintiff asserts that on the second trial the evidence shows that Lindane was on all the samples of rice that were taken and analyzed, except one sample that had been remilled. Even if plaintiff is mistaken in such assertion, there is nevertheless evidence showing that a number of samples were taken and that the results of many samplings showed from 0.2 to 3.6 parts per million of Lindane, and that the addition of such parts of Lindane to milled rice may render it injurious to health. Manifestly it would be impossible to segregate from the stores of contaminated milled rice in question some unknown quantity of rice that might not have had Lindane on it in such quantities.

Since no tolerance for Lindane on milled rice as applicable to the facts of this case had been established by the Secretary of Health, Education & Welfare, the addition of any amount of Lindane to such milled rice was in violation of Section 342 (a) (2) of the Federal Food, Drug, & Cosmetic Act, and especially so if it may have rendered the rice injurious to health. The Act in question is quite specific, as stated by the Supreme Court of the United States in the recent case of Flemming v. Florida Citrus Exchange, 358 U.S. 153, 79 S.Ct. 160, 3 L.Ed.2d 188:

"Here again, in our construction of this explicit Act, we must be sensitive

to what Congress has written, and recall that 'It is for us to ascertain—neither to add nor to subtract, neither to delete nor to distort.' 62 Cases of Jam v. United States, 340 U.S. 593, 596, 71 S.Ct. 515, 518, 95 L.Ed. 566."

Section 3.41, Title 21, 1955, Code of Federal Regulations, provides: "(a) The amendment in clause (2) of section 402(a) of the Federal Food, Drug, and Cosmetic Act shall become effective on the dates specified for the following pesticide chemicals: * * * (2) Effective date October 31, 1955: * * * Lindane: * * * Grain (from treating storage bins)." On the second trial it was established that plaintiff had never had any treating storage bins. The 1954 amendment to Section 342(a) (2) as provided in Section 5 of the Act of July 22, 1954 as applicable to the facts of the case before us, became effective one year following the date of the enactment of the Act or on July 22, 1955, and was in full force and effect in August, 1955, when the Lindane was applied to plaintiff's rice. Section 120.1(e), Title 21, 1955, Code of Federal Regulations, entitled "Definitions, Interpretations, and Exemptions," provides in substance that the term "Raw agricultural commodities" does not include foods that have been processed, fabricated, or manufactured by cooking, freezing, dehydrating, *or milling.* Since plaintiff's grain had been milled and was not a raw agricultural commodity, no tolerance had been established for it. Therefore, the application of any amount of Lindane was prohibited since it would add to the milled rice a poisonous or deleterious substance that may be injurious to health as shown by the evidence adduced on the second trial.

At the time of the occurrence in question, the Federal Food, Drug, and Cosmetic Act, Section 381(d), 21 U.S.C.A., provided with respect to exports that a food intended for export shall not be deemed to be adulterated or misbranded if it accords to the specifications of the foreign purchaser, is not in conflict with the laws of the country to which it is intended for export, and is labeled on the outside of the shipping package to show that it is intended for export. "But if such article is sold or offered for sale in domestic commerce, this subsection shall not exempt it from any of the provisions of this chapter." While there is some evidence that as much as 95% of plaintiff's rice had been exported during some prior years, the evidence does not show that the rice in question was labeled for export or that it would necessarily be exported. It was held subject to sale in domestic markets as well as foreign markets. Furthermore, the undisputed testimony of plaintiff's general manager Smith who negotiated contracts with foreign buyers, was to the effect that he could not have sold to any foreign purchasers any rice containing Lindane.

■ Defendant contends, however, that plaintiff voluntarily remilled its rice, and that it was not forced to do so by the Federal, State or City authorities. We think this contention is without merit. Under the evidence adduced on the second trial, it appears that plaintiff was placed in such position by Orkin that it could not keep the rice in its possession, sell or exchange the same without being subject to criminal prosecution and punishment under Section 873 of the Ordinances of the City of Houston, and under Article 717, Texas Penal Code. Additionally, the rice could be condemned, confiscated, forfeited and destroyed under Article 4470, Texas Revised Civil Statutes. The evidence shows that the State agency was prepared to take action if plaintiff's rice was sold or offered for sale with Lindane on it. Also, the shipment of such rice in interstate commerce would have subjected plaintiff to penalties under Sections 333 and 334 of the Federal Act. Having placed the plaintiff in the situation where it could neither retain nor sell the rice in question without violating the Pure Food laws of the City, State and Federal governments, and subjecting itself to prosecution and penalties, the defendant is not in a position to urge that plaintiff acted voluntarily and not under coercion in

remilling the rice and thereby preventing such prosecution and penalties, and at the same time mitigating the damages which might have resulted from confiscation and destruction of the rice by the State or other governmental authority.

■ The cases cited by defendant with respect to voluntary payments are inapplicable to the factual situation in the present case. The retention or sale or offer to sell the rice in question constituted a violation of law, making plaintiff's action necessary to avoid prosecution, penalties and seizure of the rice. Under these circumstances plaintiff's act in remilling the rice was not voluntary but coerced as a matter of law. Where one risks prosecution, penalties and forfeiture of his property for noncompliance with law, his act in complying cannot be said to be voluntary. National Biscuit Co. v. State, 134 Tex. 293, 135 S.W.2d 687; Crow v. City of Corpus Christi, 146 Tex. 558, 209 S.W.2d 922; District of Columbia v. American Security & Trust Co., 292 U.S.App.D.C. 33, 202 F.2d 21; St. John's Electric Co. v. City of St. Augustine, Fla., 81 Fla. 588, 88 So. 387; 17-A Amer.Jur. Duress and Undue Influence §§ 7, 14, p. 875; 21 Tex.Jur. 2d Duress & Coercion § 2, p. 116.

■ Plaintiff on its appeal complains that the trial court erred in excluding certain evidence relative to lost profits and in denying its motion for lost profits before judgment. We have been unable to find in the record any request by plaintiff for submission of any issue on lost profits as such. The answer of the jury to Special Issue No. 7 awarding damages in the sum of $15,000.00 for the loss of use of plaintiff's mill consumed in remilling the milled rice, necessarily includes lost profits. No judgment for lost profits in any other amount could have been entered without plaintiff's compliance with Rule 301, Texas Rules of Civil Procedure. There was no such compliance.

■ Plaintiff has cited a number of cases in support of the rule that where a business is already established and making a profit, it is permissible to show the amount of business done in corresponding periods of time not too remote, and the rule that uncertainty of proof as to the amount of lost profits will not defeat recovery so long as there is no uncertainty as to the fact of legal damages. These general rules are not questioned by defendant. In the instant case plaintiff's witness was asked to give oral testimony from some records as to the amount of rice purchased by plaintiff in October, November and December of 1953, to which question defendant objected because there had been no showing of any comparison between conditions during such period of time and the period of time in issue in this law suit. The objection was sustained. Plaintiff's witness was also asked whether he had an opinion as to the amount of rice he would have bought, to which question the defendant objected as not being based upon facts. No other evidence along such line was offered, although in its bill of exception in the jury's absence such witness testified that he thought "it would be reasonable to suppose" that they would have bought at least 100,000 additional barrels and that he thought "it is reasonable to suppose we would have made at least 50 cents a barrel." We cannot say that the court improperly excluded such testimony, but if there was any error in such connection, we think the exclusion was not harmful in view of all the records and testimony relative to earnings and profits of the business that were admitted in evidence.

■ In its sixth Point, plaintiff asserts that the court erred in denying interest before judgment upon its damages. Plaintiff sued not only for its damages but for interest thereon as damages. It states in its brief that it continued to sustain damages until June 7, 1956. It is our view that the plaintiff is entitled as a matter of law to 6% interest as damages on the $36,246.32 from that date until date of judgment, such interest amounting to $12,239.17. The Texas Co. v. The State of Texas, 154 Tex. 494, 281 S.W.2d 83; Watkins v. Junker, 90

Tex. 584, 40 S.W. 11; Tortuguero Logging Operation, Ltd. v. Houston, Tex.Civ.App., 349 S.W.2d 315; Ewing v. Wm. L. Foley, Inc., 115 Tex. 222, 280 S.W. 499, 44 A.L.R. 627.

We think there is no merit in plaintiff's contention that it was entitled to a directed verdict or in its contention that the court erred in granting a partial summary judgment for defendant in connection with plaintiff's claim for gross negligence and exemplary damages. A careful review of the record shows that there is no evidence that would warrant submission of an issue in connection with alleged gross negligence on the part of the defendant.

The judgment of the Trial Court is reformed by adding thereto interest to date of judgment in the sum of $12,239.17, and, as reformed is affirmed.