**CITY OF CORPUS CHRISTI, Appellant,**

**v.**

**Frank T. DROUGHT, Appellee.**

**No. 14257.**

Court of Civil Appeals of Texas.

San Antonio.

May 27, 1964.

Rehearing Denied July 8, 1964.

I. M. Singer, City Atty., James P. Ryan, Asst. City Atty., Corpus Christi, for appellant.

Keys, Russell, Keys & Watson, Corpus Christi, Thomas Drought, San Antonio, for appellee.

BARROW, Justice.

This suit was brought by appellee, Frank T. Drought, to recover for engineering services rendered appellant in connection with an application made by City of Corpus Christi to the Civil Aeronautics Administration (hereinafter called C.A.A.), for a grant of money for construction of a new municipal airport, and in connection with the City bond election involving the same project. Appellee did not have a valid contract under the charter of the City, and therefore sued in quantum meruit. The trial court rendered judgment favorable to appellee on the jury verdict for recovery of the sum of $11,000.00, together with interest from January 1, 1957, and the City has perfected this appeal.

Both parties agree that the rule applicable to this case was stated in the very similar case of City of Houston v. Finn, 139 Tex. 111, 161 S.W.2d 776, as follows: "It is the settled law in this State, as established by the decisions of this Court, that where a municipality knowingly receives property or services on an agreement which it had power to enter into as a contract, but which was not legally entered into so as to make it binding as a contract, it will be compelled to pay the reasonable value of the property or services so received, as on an implied contract." It was further said: "The contract that is enforced is one that the law implies, because justice demands that a municipality shall not be permitted to receive and retain the benefits of an agreement without paying the reasonable value of such benefits." See also, Sluder v. City of San Antonio, Tex.Com.App., 2 S.W. 2d 841; City of Houston v. Howe & Wise, Tex.Civ.App., 323 S.W.2d 134.

In 1956 appellee was a licensed professional engineer with considerable experience in the engineering of airport projects. On June 25, 1956, he went from his home in San Antonio to Corpus Christi at the request of appellant's Mayor, and discussed the construction of a proposed new airport with the Mayor and two councilmen. After this discussion, appellee agreed to perform the engineering services necessary to secure financial aid from the C.A.A. and for submission of a proposed bond issue. This work was to performed with as much secrecy as possible to avoid speculators buying up the land needed by the City. After several conferences, both in Corpus Christi and with C.A.A. officials in Fort Worth, and after preparation of many preliminary sketches and plans, on August 24,

1956, appellee delivered a satisfactory master plan to the City for the proposed new airport. On August 27, 1956, appellee filed the formal request for aid with the C.A.A. in Fort Worth. On September 1, 1956, the City called a bond election, and on October 6 the issuance of the bonds was approved. Appellee was not employed to perform the engineering services for actual construction of the airport.

City concedes that appellee performed the preliminary phase of the engineering services, and that City derived some benefit from same. It asserts, however, that the verdict of the jury is excessive insofar as the benefit received by the City is concerned.[1]

■■ City asserts by its first five points that the trial court erred in admitting numerous exhibits in evidence which showed services performed by appellee that were of no benefit to City. Exhibit 3 was a wind rose, and Exhibit 4 was a contour map, both of which were furnished to appellee by the Mayor. Their origin and use by appellee in preparation of proper layout of the airport, were clearly explained to the jury and there was no error in the admission of these exhibits. Exhibits 5-25, 30 and 31, were drawings and plans of the airport layout which were prepared by appellee. Appellee testified that Exhibits 5-25 were preliminary drawings and proposed solutions, which were made to determine the most efficient and economical layout for the airport, which was identified as the master plan (Ex. 29). Exhibit 30 was a reproduction of the master plan with future construction distinguished from that proposed to be accomplished immediately. Exhibit 31 was a reproduction of the master plan, with a complete lighting plan incorporated therein.

City's principal complaint under these points is that a master plan was unnecessary for the preliminary phase of the engineering work and therefore it received no benefit from same. The City urges that a master plan was not required by the C.A.A. in connection with the request for aid which appellee prepared and filed for the City. The form for the request for federal aid required a description of the work to be accomplished, as well as the total estimated cost of each increment of work. The instructions also required: "Prepare a sketch or sketches of the airport layout and indicate thereon, by appropriate legend, the location of each increment of work proposed." The Assistant District Airport Engineer of C.A.A. testified that a master plan was not required, although a few applications contained such. Appellee's testimony, however, would clearly support a finding that the submission of a master plan is the better practice where funds are sought for immediate use by the municipality.

Appellee's work was also used by the City in connection with advertising for successful passage of the bond issue. There was evidence that a master plan would be necessary in order to obtain accurate cost estimates upon which to base a bond issue. The similarity between some of the exhibits was demonstrated to the jury. The exhibits complained of by the City were prepared by appellee, and the jury was given all the evidence as to how they were prepared and their value to the City. Special Issue No. 1 required the jury to find the value of the services rendered to the benefit of the City. The trial court did not err in admitting

I. VERDICT OF THE JURY:
Special Issue No. 1: The sum of $11,-000 would reasonably and fairly compensate plaintiff for the value of his services rendered to the benefit of the defendant in 1956.
Special Issue No. 2: Plaintiff did not represent to the defendant that he would perform certain preliminary engineering services in connection with the proposed new Municipal Airport for an amount not to exceed $3,000.
Special Issues Nos. 3 and 4 were submitted conditionally and were not answered.
Special Issue No. 5: Plaintiff did not waive any claim for compensation for his services in excess of the sum of $3,-000.

these exhibits which demonstrated some of the services performed by appellee. The benefit of same to the City was determined by the jury.

■ City asserts by three points that the value of the work required by the C.A.A. did not exceed $3,500, and that the verdict of the jury of $11,000 is so against the great weight and preponderance of the evidence as to require a remittitur or a new trial.

It is our opinion, after a review of the 632 pages in the statement of facts, that these points are without merit. Three expert witnesses testified as to the reasonable value of appellee's services. Appellee testified that they were of the value of $17,000. His valuation was based upon the fee schedule of the Texas Society of Professional Engineers which authorized a minimum fee of $5,721 to $17,163. This schedule provided for a minimum fee for the preliminary phase of a job with the total cost to be in excess of one million dollars, of from five to fifteen per cent of the engineer's total fee, which is five percent of the cost of the job. James S. Naismith, a licensed professional engineer, testified that the services performed by appellee were of the reasonable value of from $9,000 to $12,000. He further testified that it was important in the preliminary phase to have an accurate cost estimate. Jack Graham, the Director of Public Works for the City at the time of trial, testified that $3,000 to $3,500 would be the reasonable value of the preliminary engineering services necessary to secure the C.A.A. approval of request for aid. He did not testify as to the value of the master plan in connection with the bond issue.

One of the City's defenses was that appellee had agreed that he would not charge more than $3,000, and two former councilmen testified to this effect. Appellee testified, however, that he agreed to accept this amount only in the event that the bond issue failed. His testimony was corroborated by a memorandum to the Mayor made shortly after appellee commenced the work. It is seen that this defense was affirmatively

submitted to the jury and was rejected. We cannot say from an examination of the entire statement of facts, that the verdict of the jury is so excessive as to evidence sympathy, prejudice or bias on its part.

■ The judgment was rendered on April 8, 1963, and City complains that the trial court awarded interest on the sum of $11,000 from January 1, 1957, at the rate of 6% until paid. In Tortuguero Logging Operation, Limited v. Houston, Tex.Civ. App., 349 S.W.2d 315, this Court expressly approved the rule which permits recovery of pre-judgment interest upon unliquidated damages in an action for quantum meruit. This rule was cited with approval in Orkin Exterminating Co. v. Gulf Coast Rice Mills, Tex.Civ.App., 362 S.W.2d 159.

The judgment is affirmed.