MASSACHUSETTS BONDING AND IN-
SURANCE CO. et al., Petitioners,

v.

ORKIN EXTERMINATING COM-
PANY, Inc., Respondent.

No. A–11416.

Supreme Court of Texas.

May 31, 1967.

Rehearing Denied July 19, 1967.

The Kempers, T. M. Kemper, John D. Richardson, Houston, Graves, Dougherty, Gee & Hearon, J. Chrys Dougherty, Austin, for petitioners.

Butler, Binion, Rice, Cook & Knapp, Robert H. Singleton, Houston, Wilson, Kendall, Koch & Randle, Will Wilson, Austin, for respondent.

HAMILTON, Justice.

This a suit on a retrospective rating plan general liability policy. Both petitioners, defendants and appellees below, and respondent, plaintiff and appellant below, filed motions for summary judgment. The trial court granted petitioners' motion and rendered a take nothing judgment. The Court of Civil Appeals reversed and rendered judgment for respondent in the sum of $54,621, plus interest. 400 S.W.2d 20. Petitioners here are Massachusetts Bonding, hereinafter referred to as the Company, and its successor in interest.

Gulf Coast Rice Mills sued respondent Orkin for damages arising from the application of Lindane, a pesticide, to the rice mill's facilities. Judgment in favor of Rice Mills became final. Orkin Exterminating Company, Inc. v. Gulf Coast Rice Mills, 362 S.W.2d 159 (Tex.Civ.App. 1962, writ ref'd n. r. e.), cert. den. 375 U. S. 57, 84 S.Ct. 175, 11 L.Ed.2d 122 (1963). In that case the jury found that Orkin was negligent in the application of Lindane in August of 1955 to the rice and premises of Gulf Coast, which negligence was the proximate cause of damage to the rice. Orkin paid the judgment and demanded reimbursement from petitioner Massachusetts Bonding under its multi-state general liability policy issued for the period from January 1, 1955 to January 1, 1956.

Some pertinent provisions of the policy are as follows:

"Coverage C—Property Damage Liability—Except Automobile.

"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident.

"* * *

"9. Notice of Accident. When an accident occurs written notice shall be given by or on behalf of the insured to the company or any of its authorized agents *as soon as practicable.* Such notice ʃhall contain particulars sufficient to identify the insured and also reasonably obtainable information respecting the time, place and circumstances of the accident, the names and addresses of the injured and of available witnesses." (Emphasis added.)

Gulf Coast filed suit against Orkin on June 25, 1957. On July 22, 1957, a "Non-Waiver Agreement" was signed by Orkin as follows:

"It is hereby agreed by and between the Massachusetts Bonding and Insurance Company and the Orkin Exterminating Company, Inc. that no action heretofore or hereafter taken by the Massachusetts Bonding and Insurance Company shall be construed as a waiver of the right, if any, of the Massachusetts Bonding and Insurance Company to deny liability to the Orkin Exterminating Company, Inc. under a policy of insurance which is claimed by the Orkin Exterminating Company, Inc. to cover claims asserted or which may hereafter be asserted by R. L. Williams and J. M. Chumney, doing business as a partnership under the name of Gulf Coast Rice Mills, as either the bases of the suit brought in its name as Plaintiff in Cause No. 488,534 against Orkin Exterminating Company, Inc. as Defendant therein in the District Court of Harris County, Texas, or otherwise.

"It is also agreed that by the execution of this agreement the Orkin Exterminating Company, Inc. does not thereby waive any right under the said policy. * * *"

The Company denied liability on two grounds: First, it asserted that the application of Lindane was not an "accident" within the coverage of the policy; it further contended that, even if it was an "accident,"

notice thereof was not given "as soon as practicable," for the incident occurred in August of 1955 and notice was not given until May 24, 1956. Orkin contends that the incident was an "accident" and that the Company waived the defense of late notice by charging and collecting premium based on the Gulf Coast claim. There seems to be no contention that notice of the alleged "accident" was given as "soon as practicable."

The Court of Civil Appeals rendered summary judgment for respondent, holding that the application of Lindane was an accident, and that as a matter of law petitioners waived the notice of accident requirement by charging a retrospective premium based on the Gulf Coast claim. Petitioners' points of error here are, (1) petitioners' action with regard to the retrospective rating plan of premium payment was not a waiver or estoppel; (2) the non-waiver agreement precluded any waiver or estoppel; (3) the damages for which Orkin was held liable were not "caused by accident" within the coverage of the policy; (4) in the alternative, triable issues of fact were raised by the pleadings, depositions, admissions and affidavits. We shall consider petitioners' points of error in that order.

Petitioners' first point presents the question of whether the retrospective premium computations constituted waiver of the notice of accident or an estoppel to assert breach thereof, as a matter of law.

The process by which retrospective premiums were computed under the policy is rather complex, but briefly it involved recomputation of premiums based on *incurred losses:* "Losses actually paid," "reserves for unpaid losses as determined by the Company," and "allocated loss expense." Two such computations are relevant here, the first in August or September of 1956 and the second in August or September of 1957.

The Court of Civil Appeals held:

"[P]rior to the time appellee secured the nonwaiver agreement it had charged and collected a premium $1,000.00 in excess of that it would have been entitled to collect had not this claim been considered an 'incurred loss'. At the end of eighteen months after the termination of the first policy year it had recomputed the premium as required by the policy because all claims had not been settled, and the retrospective premium did not exceed the maximum. This computation was furnished to appellant before the non-waiver agreement was presented and reflected an additional premium charge by reason of the fact that the reserve for the Rice Mill claim was increased and included in 'incurred losses'."

We do not agree with this interpretation of the record by the Court of Civil Appeals. That court necessarily relied upon the Company's answers to interrogatories propounded by Orkin. Orkin asked whether Massachusetts Bonding considered the Gulf Coast claim in any way in making the first and second retrospective computations. The Company answered yes, the reserve for the Gulf Coast claim was $1,000 when the first computation was made; the incurred loss was increased to $10,000 in January, 1957.

However, Orkin has introduced certain other documents in this record which show that no premium was charged or collected until after the nonwaiver agreement was signed July 22, 1957. The Company furnished Orkin a claim analysis for the first retrospective premium which showed that *no incurred losses* had been established for general liability property claims in the State of Texas at the time the first retrospective premium was computed. A credit bill from the insurance agent dated September 28, 1956, showing a return premium of $37,569, was attached as a covering document. From this it appears that no premium was charged for the Gulf Coast claim in the first retrospective premium adjustment.

The charge for the second retrospective premium adjustment was made on September 16, 1957, as shown by an invoice of that date. This was after the nonwaiver agreement was signed, and for that reason cannot effect a waiver or estoppel. The Company admitted establishing a reserve and increasing it to $10,000 in January of 1957; furthermore, a second claim analysis bearing a date of July 15, 1957 (some seven days before the nonwaiver agreement was signed) was submitted to Orkin showing a $10,000 incurred loss for the Gulf Coast claim. These preliminary bookkeeping steps do not establish waiver or estoppel as a matter of law.

■ Orkin contends further that in this case the retrospective premium was permitted by the insurer to become final after a third retrospective computation as of July 1, 1958. However, this also occurred after the signing of the non waiver agreement. We hold that the nonwaiver agreement has the effect of holding the computation of the premium allocable to this claim open for future adjustment after the liability of petitioners to respondent has been determined. Therefore, the premium computation relative to this specific claim did not become final, and it could not effect a waiver of, or estoppel to assert, the policy defense. Petitioners' first point is sustained. The Court of Civil Appeals erred in holding that Orkin was entitled to judgment as a matter of law.

Petitioners contend by their second point that they are entitled to summary judgment because the nonwaiver agreement, as a matter of law, prevents the raising of estoppel or waiver. They point to the language of the agreement providing that "no action *heretofore or hereafter* taken by the Massachusetts Bonding and Insurance Company shall be construed as a waiver * * *." (Emphasis added.)

The Court of Civil Appeals held that Orkin preserved its right to plead and prove waiver of policy conditions by reason of ac-

tions of the insurer in the clause in the non-waiver agreement reading: "It is also agreed that by the execution of this agreement the Orkin Exterminating Company, Inc. does not thereby waive any rights under the said policy." This Court construed virtually identical language in New Amsterdam Casualty Co. v. Hamblen, 144 Tex. 306, 190 S.W.2d 56 (1945). There the assured sought to assert a waiver from conduct of the insurer after the execution of the non-waiver agreement the day following notification of the accident. They urged that the above quoted language preserved their right to assert such a waiver. We held,

"The difficulty with their position, as we see it, lies in the fact that their 'rights under the said policy' did not include the right to limit the effect of the non-waiver agreement. We have held above that * * * the claim was already invalidated on the date the notice was given to petitioner. *Respondents had no right at that time to exact payment of petitioner and they did not, therefore, preserve such right in the quoted language from the non-waiver agreement."* (Emphasis added.)

 We hold that "rights under the said policy" means those rights which had accrued under the policy at the time the parties entered into the nonwaiver agreement. If the Gulf Coast claim was not invalidated by late notice because the Company had waived the defense of failure of such condition at the time the nonwaiver agreement was executed, and the claim was within the coverage of the policy, Orkin had a right to protection under the policy within the meaning of the nonwaiver agreement which was preserved thereby. The second point is without merit.

 Petitioners' third point asserts that the damage caused Gulf Coast Rice Mills was not an accident as that term was used in the policy. It is a general rule that, when a person is responsible over to another, either by operation of law or by express contract, and he is duly notified of the pendency of the suit and has actually assumed management of the proceeding or defense, the judgment in such suit will be conclusive as to the issues litigated therein. See Littleton v. Richardson, 34 N.H. 179, 66 Am.Dec. 759 (1856); Washington Gas Light Co. v. Dist. of Columbia, 161 U.S. 316, 16 S.Ct. 564, 40 L.Ed. 712 (1896), and cases therein cited. Here, the attorneys for petitioners conducted respondent's defense of the Gulf Coast suit. Petitioners are therefore bound by the material issues determined therein: (1) Orkin was negligent in the application of Lindane in August of 1955, and (2) such negligence was the proximate cause of the damages sustained.

 Petitioners contend that the damage to Gulf Coast arose gradually from three applications of Lindane from 1964 to 1965. See United States Fidelity & Guaranty Co. v. Briscoe, 205 Okl. 618, 239 P.2d 754 (1952). This contention is without merit, for the damages in the Gulf Coast litigation were predicated on a single application of Lindane in August of 1955. Petitioners are bound by that finding in the former case. Petitioners further contend that the application of Lindane constituted gross negligence, which is not within the scope of the term "accident" as used in the policy. Petitioners are again precluded from this assertion because the jury in the Gulf Coast case found that the application of Lindane was negligence, and not gross negligence. We construe the term "accident" as used in the policy to include negligent acts of the insured causing damage which is undesigned and unexpected. See Beaumont, S. L. & W. Ry. Co. v. Schmidt, 123 Tex. 580, 72 S.W.2d 899 (1934); Travelers Ins. Co. v. Reed Co., 135 S.W.2d 611 (Tex.Civ.App.1939, writ dism'd judgmt. cor.); Anchor Casualty Co. v. McCaleb, 178 F.2d 322 (5th Cir. 1950); American Indemnity Co. v. Jamison, 62 S.W.2d 197 (Tex.Civ.App.1933, no writ); Bundy Tubing Co. v. Royal Indemnity Co., 298 F.2d 151 (6th Cir. 1962); Maryland Casualty Co. v. Mitchell, 322 F.2d 37 (5th

Cir. 1963). We hold that the damage for which Orkin was held liable was caused by an "accident" within the meaning of the policy. Petitioners' third point is without merit.

By their final point, petitioners assert in the alternative that the Court of Civil Appeals erred in holding that the Company's acts constituted waiver and estoppel as a matter of law and in not reversing and remanding the cause for trial. We sustain this point, for although waiver or estoppel has not been established as a matter of law, we believe that a material issue of fact as to waiver has been raised by the record.

At the outset, we wish to point out a distinction between waiver and estoppel in this type of case. The Court of Civil Appeals cited Southland Life Ins. Co. v. Lawson, 137 Tex. 399, 153 S.W.2d 953, 136 A.L.R. 1212 (1941) for the proposition that the doctrine of waiver is merely another name for the doctrine of estoppel, which can only be invoked where the conduct of the company has been such as to induce action. in reliance upon it, and where it would operate as a fraud upon the assured if they were afterwards allowed to disavow their conduct. The Southland Life case involved an alleged waiver by custom and course of dealing as to payment of premiums. This case has been consistently followed in other cases involving the same question of waiver by custom in payment of premiums. See American Standard Life Ins. Co. v. Denwitty, 256 S.W.2d 864 (Tex. Civ.App.1953, writ dism'd); Carter v. Old Faithful County Mut. Fire Ins. Co., 243 S.W.2d 215 (Tex.Civ.App.1951, no writ). These cases, however seem to be an exception to the general rule.

Waiver has been frequently defined as an intentional relinquishment of a known right or intentional conduct inconsistent with claiming it. Texas & P. Ry. Co. v. Wood, 145 Tex. 534, 199 S.W.2d 652 (1947); Rolison v. Puckett, 145 Tex. 366, 198 S.W.2d 74 (1946). In Equitable Life Assur. Society v. Ellis, 105 Tex. 526, 147 S.W. 1152 (1912), this Court held that waiver is essentially unilateral in its character; it results as a legal consequence from some act or conduct of the party against whom it operates; no act of the party in whose favor it is made is necessary to complete it. It need not be founded upon a new agreement or be supported by consideration, nor is it essential that it be based upon an estoppel.

The distinction between waiver and estoppel was made in Wirtz v. Sovereign Camp, W.O.W., 114 Tex. 471, 268 S.W. 438, 441 (1925), as follows: "Waiver presupposes full knowledge of existing right, while estoppel arises where by fault of one, another has been induced to change his position for the worse." In New Amsterdam Casualty Co. v. Hamblen, 144 Tex. 306, 190 S.W.2d 56 (1945) this Court first held that no issue of estoppel was raised by the evidence in the case, and additionally that an issue of waiver would have been raised but for the execution of a nonwaiver agreement the day after late notice of an accident had been received by the insurer. Our inquiry with regard to the issue of waiver is whether the conduct of petitioner shows an intentional relinquishment of a known right or intentional conduct inconsistent with claiming it.

The record shows that the insurer assumed the complete investigation and adjustment of the Gulf Coast claim for thirteen months after notice of the accident was given. At no time between receipt of notice of the accident and the execution of the nonwaiver agreement did the insurer indicate in any way that it denied coverage under the policy. Orkin did not participate in the investigation except to the extent the insurer requested it to supply information.

The insurance company did more than merely obtain the facts concerning the ac-

cident. The insurer's adjuster conferred from time to time with attorneys for Gulf Coast Rice Mills. He advised the insurer that it appeared unlikely that Gulf Coast would let the statute of limitations run on the claim. The Company acknowledged that Gulf Coast was pressing the adjuster to settle the claim, but did not authorize settlement, stating that it hoped for a lower offer. The attorney for Gulf Coast informed the adjuster that he was of the impression that the claim might be settled for about half the amount of the claim. No settlement was ever authorized.

In a letter to the Company the adjuster intimated that he was not obtaining full cooperation from Orkin. The Company replied, in part: "We have had no reason to criticize our assured for failing to co-operate with us in the handling of any claim in the past, and we do not feel that they should be criticized now in this instance." The Company wrote Orkin that "we have a very dangerous situation on our hands as this claim is concerned, and we will appreciate your co-operation and assistance in combatting the allegations of these claimants." A copy of a statement taken from Orkin's local manager was enclosed "in order that it may help you determine what information we will need to defend this claim." All these acts occurred after the Company was aware that it had an absolute defense to liability on the policy.

■ The conduct of the Company here is inconsistent in several respects with an intention to deny liability on the ground of delay in giving notice, and a genuine issue of the fact of waiver is thereby raised. Petitioners are not entitled to summary judgment. Rule 166–A, Texas Rules of Civil Procedure. Petitioners' fourth point is sustained.

We reverse the judgment of the Court of Civil Appeals rendering judgment for respondent, and the trial court's judgment rendering judgment for petitioners, and remand the cause to the trial court.

NORVELL and GREENHILL, JJ., dissenting.

Dissenting Opinion

NORVELL, Justice.

Because of "waiver", the Court has refused to give effect to the written non-waiver agreement executed by the parties on July 22, 1957. It is, in effect, said that the non-waiver agreement may mean nothing contractually because there is a fact issue as to whether the insurance company, at some time *before* the execution of the written agreement, intended to relinquish a known contractual right, namely, that of notice in accordance with the provisions of the insurance policy. This holding is not predicated upon fraud, overreaching, or other inequitable conduct which would in good conscience prevent a party to a contract from insisting upon its terms. Accordingly, I think that we should take the parties at their word.

The written contract plainly stated "that no action *heretofore* or hereafter taken by Massachusetts Bonding and Insurance Company shall be construed as a waiver of the right, if any, of the Massachusetts Bonding and Insurance Company to deny liability to the Orkin Exterminating Company, Inc. under a policy of insurance which is claimed by Orkin Exterminating Company, Inc. to cover claims asserted or which may hereafter be asserted by R. L. Williams and J. M. Chumney, doing business as a partnership under the name of Gulf Coast Rice Mills, * * *" However, despite this rather carefully and clearly worded contractual statement made by the parties that there was no waiver on the part of the insurance company for "action heretofore taken", i. e. prior to July 22, 1957, this Court now holds that because of "action hereto-

fore taken" the company has waived its right to deny liability upon the policy. It is said that, "The conduct of the (insurance) Company here is inconsistent in several respects with an intention to deny liability on the ground of delay in giving notice, and a genuine issue of the fact of waiver is thereby raised". I cannot agree with this statement. An insurance company certainly has the right to investigate before being called upon to admit or deny liability upon a claim and non-waiver agreements are taken for that purpose. A judicial holding that some prior investigation would (depending upon a jury's answer) operate to render ineffectual a non-waiver agreement subsequently made by the parties, would in part, at least, defeat the legitimate purpose of a bilateral non-waiver contract. The parties have contracted that past actions of the insurance company should not operate as a waiver and in the absence of fraud or overreaching, such contract should be respected.

Under the law of Texas, there are important distinctions between waiver and estoppel. The Court in its opinion recognizes this distinction, and although the Court of Civil Appeals based its decision at least in part upon estoppel, this Court adopts "waiver" as the basis of its holding that a summary judgment was erroneous. In view of this, I shall not discuss estoppel other than to say that in my opinion the estoppel basis is also untenable. On July 22, 1957, Orkin Exterminating Company, Inc. was a free contracting agency. If it was willing to have the insurance company to defend the Gulf Coast Rice Mills action without an admission of liability, they were free to so contract.

I respectfully dissent from the judgment of the Court. I would reverse the judgment of the Court of Civil Appeals and affirm the judgment of the trial court.

GREENHILL, J., joins in this dissent.